THE JAVA.

1. Though a steamship pursuing, in a crowded harbor, for her own greater convenience in getting into dock in a particular state of the harbor, a channel not entirely the ordinary one for vessels of her size, be bound to more than ordinary precaution, yet if she has a right to use that channel and do take such more than ordinary precaution, she is not responsible for accidents to other vessels that, with it all, were inevitable.

2. Hence, where such a steamship pursuing in such a case such a channel, with the utmost care, had occasion to cross at an acute angle the stern of a large school-ship that stood high out of water (so obstructing view), and thus struck and injured a small schooner that drifting along on the other side of the school-ship, emerged suddenly at its stern—the steamship not having before seen the schooner, nor the schooner the steamship—*held* that the steamship was not responsible; the more especially as the schooner which was going out of port had just cast away her tug, was drifting along with the tide, and having all her hands engaged in hoisting sail, had no sails set so as to make her specially visible, nor any lookout to see ahead.

APPEAL from the Circuit Court for the District of Massachusetts.

On the 7th of November, 1866, the Cunard steamer Java, a screw-steamship of large size, drawing nineteen feet water, and about 360 feet long (more than usual length), entered Boston harbor (a diagram of part of which is on a page following), about noon, in fine, clear weather, the tide being about one hour's ebb, and the wind blowing a three or four knot breeze from the west. Her berth and point of destination was a wharf at East Boston, about 2000 feet east of the Boston Commercial Wharves. Her proper course in coming up from what is called the Upper Middle until she arrived within about a mile of the Commercial Wharves, and

seven-eighths of a mile from her own dock, was about north-west by west. At this point, a direct course to her dock would require her to change her course about two points more to the north. But almost directly in her path, a little to the right of it, lay at anchor a large school-ship for the instruction of boys, nearly two-thirds of the distance between her and her dock, and about 17 feet out of water. In getting into her berth she could go either to the right or to the left of this school-ship. The main expanse of water (2000 feet wide) was to the left of the school-ship, but there was a sufficient channel, and one recognized on charts as such, of about 500 feet in width, at that period of tide, to the right of it. Her most direct course would have been to the left, and this was the one by which the Cunard steamships more usually went in; but they had, more than once, it was testified, gone in on the right, as other steamships not unfrequently did, and on this occasion the pilot chose the right, for the reason, as alleged, that several vessels were lying at anchor to the left or west of the school-ship, along in front of the East Boston docks; and he judged that he could get the Java more easily into her berth by going to the right than on the other side. His idea was that owing to her length, if going on the left side the vessel could not have turned herself round without aid. He had scanned the channel about a mile below the school-ship, and saw nothing opposing.

It so happened that just as the Java approached the school-ship, the schooner James McCloskey, laden with linseed, came out from behind it, having been previously concealed by it (her sails not being up), and although the Java was only making about two knots an hour, had her lookouts all in place and vigilant, and used every exertion that human skill could devise, a collision was inevitable, and the schooner and cargo were so much injured that she had to run on to the East Boston flats to prevent sinking. The schooner, it may be added, had been towed down from a wharf at East Boston to the school-ship by a tug, which she there discharged; and she was now floating along with the tide while her crew

Diagram of the port of Boston.

were hoisting her sails; and not having at the moment any lookout. This suit was brought by the owners of the James McCloskey to recover the damage to vessel and cargo.

The question was, whether the Java was in fault. No fault was seriously suggested but that of going to the right hand of the school-ship. The District Court decided in favor of the Java. From that decision an appeal was taken to the Circuit Court. It was there argued that, as matter of fact and on the evidence before the court, the Java had pursued an unusual course in attempting to go to her dock by the passage to the right of the school-ship, and that for having taken this unusual course she was liable for what had happened. The learned judge who delivered the opinion of that court, in answer to this argument, said:

" A vessel is not to be considered in fault merely because she takes, for reasons of her own convenience or necessity, an unusual course; but when there is a usual and an unusual course, the vessel taking the unusual course for her convenience *does it at her peril, and is bound to see that she does it in safety."*

Again he said:

" The school-ship for many years had been constantly, during the winter months, kept moored in the same position near the edge of the channel. She was large and high out of water. The pilot of the Java knew her position, and that the view of a small sailing vessel might be shut out by the school-ship. The steamer was bound to guard against the emergency. If she went under the stern of the school-ship at an acute angle under such circumstances, she was bound by law to proceed so slowly and with so much vigilance that she could keep out of the way of a sailing vessel."

The Circuit Court accordingly reversed the decree of the District Court, and decreed for the libellants. The owners of the Java now brought the case here.

*Mr. Richard Henry Dana, for the libellants, and in support of the ruling below:*

It is a well-settled rule of admiralty law, one enforced by

statute,* that if a steamer approach a sailing vessel, the steamer is required to take the necessary measures to avoid collision; and if collision occurs, and it is not shown to have been inevitable, the steamer is, *primâ facie*, in fault.† Inevitable accident is not simply when it is too late, but it must appear that its being too late was not the fault of either side. It must be understood to mean "a collision which occurs when both parties have endeavored, by every means in their power, with due care and caution, and a. proper display of nautical skill, to prevent its occurrence."‡ It is an equally settled rule that a steamer, in entering a harbor, is bound to great caution. The vigilance is thrown on her Ordinary care will not excuse her. Steamers, in such instances, have been held in fault for not using precaution, although they may have done their utmost at the time.§ If the night is too dark to distinguish a small vessel in season, a large steamer should not attempt to go down the harbor.‖ This court indeed always holds a steamer responsible for the selection of her course. If she takes an unusual course, or one that involves more risk than another, when she has an election, or voluntarily puts herself in a position where, if a sailing vessel shall happen to come in the way, she cannot avoid her, or cannot do so without extreme measures on her part, she is responsible for the damage. And, in such cases, it is not an excuse to show, that *but for some mere error*, not a fault, in the other vessel, or some accident to her, the collision *might* not have occurred; it not being made clear that the collision was occasioned by a fault of the other vessel to which the course taken by the steamer did not contribute.¶

Now, to apply these principles to this case, the Java had the usual broad channel, and deliberately elected to go through a narrow passage, very seldom used by screw-steamers of her

---

* Act of 1864, ch. 69, art. 15, 13 Stat. at Large, 60.

† The Carroll, 8 Wallace, 302; The Oregon, 18 Howard, 570.

‡ The Pennsylvania, 24 Id. 313.        § The Southern Belle, 18 Id. 587.

‖ The R. B. Forbes, 1 Sprague, 329.

¶ The Isaac Newton, 18 Howard, 581; The Southern Belle, Ib. 584; Fretz *v.* Bull, 12 Id. 466.

length and draft, for her own convenience solely. In doing
this, she took upon herself the risk, if ill consequences en-
sued. Such a vessel as she was—a steamer of great length
and draft, for which the passage inside was hazardous, in
case any craft should be in her way there—ought not to
have gone through that passage unless she knew that the
passage was clear.

At the place where she ported her helm to go that way,
the Java could not see the course inside the school-ship.
Still, if she had kept close on the right side of the channel,
the course would have been more open to her view. In
going through the passage, therefore, she had an election,
and chose to keep in the middle of the channel so as to bring
her to such an angle with the school-ship that she could not
see objects on the other side, or on the starboard bow of the
school-ship. She is chargeable with negligence in this elec-
tion; for it is clear that as soon as she saw the McCloskey,
a collision was inevitable. Neither her helm, nor her ma-
chinery, nor her ground-tackle, nor all together, could pre-
vent it.

The Java could never be sure that small vessels, tugs,
boats, barges, and scows, might not come into the passage
at any moment. They, on the other hand, had no reason
to expect that such a vessel as the Java would be there.
Some large steamers go inside, but not those we may reason-
ably affirm like the Java; and it is to be presumed that they
keep on the north side, in order to keep the passage open to
view, so that they can both see and be seen. Therefore, if
a small vessel left a wharf in East Boston to go inside, and
saw no steamer in view, she was justified in supposing she
should not meet one until she got clear of the school-ship.
This crossing the stern of the school-ship by a huge screw-
steamer was a surprise.

The collision was not inevitable; for there were two other
courses open to the Java, in one of which it could not, and
in the other probably would not, have occurred. Nothing
happened that she was not bound to anticipate as possible
or probable.

The Circuit Court, though not receiving as of great weight our argument that the Java pursued an unusual course, and was therefore in fault, yet takes a ground which was what in effect we meant to urge, to wit, that "when there is a usual and an unusual course, the vessel taking the unusual course for her convenience does it at her peril, and is bound to see that she does it in safety." So again, when saying that the school-ship for many years had been, during the winter months, "kept moored in the same position near the edge of the channel; that she was large and high out of water; that the pilot of the Java knew her position, and that the view of a small sailing vessel might be shut out by the school-ship, and that the steamer was bound to guard against the emergency." These were the views, in truth, meant to be presented by us, and we rely on them as true ones.

*Mr. W. G. Russell, contra.*

We admit the obligation of a steamship to avoid a sailing vessel; that the omission so to do renders the steamship *primâ facie* liable; that precaution on the part of the steamship must be seasonable; that extreme caution is required in entering a port; that a departure from a course required by established usage is a fault; but we contend that the obligation to avoid a sailing vessel only arises where the vessels are in sight of each other, unless their failure to see each other results from previous fault of the steamer; that the *primâ facie* case against the steamer may be overcome by affirmative proof of due care; that the burden of proof is on the libellants, and that there is no liability where fault is disproved.

The Circuit Court erred in law by imposing liability where there was no fault; or, in fact, by assuming that the steamer might reasonably have anticipated meeting the schooner, when, in fact, she had no reason to expect to meet her.

The facts show due care on the part of the Java. Neither vessel was seen by the other till the collision was inevitable.

The school-ship concealed each vessel from the other. This fact also determines the course of the two vessels.

The Java was not in fault for not sooner discovering the schooner. Her lookout was sufficient, well stationed, vigilant. The schooner was not discovered, because without canvas and in range of the school-ship. She was seen as soon as visible.

The Java was not in fault in her course or the manner in which she pursued it. The Cunard steamships are not excluded from taking their course inside the school-ship by *non user*. Usage of Cunarders not to take that course would be inadmissible in law, and if it were admissible no *non user* is proved. Contrariwise, there was a not wholly infrequent use by Cunard ships and a quite frequent use by all other steamships. The course of the schooner was not influenced by her not expecting to meet the steamer.

Inside the school-ship was the proper course enough. The Java took the course with all possible precaution. The channel is shown on charts. That it is safe and proper is proved by this fact; and, still more, by its frequent use by all classes of steamships; and there was the special reason for taking it here that there were several vessels anchored ahead of the school-ship, obstructing the outside course to the Java's dock, and which would have obliged her to make a great circuit and to go into dock in a way which without tugs it would have not been easy to do. Then the Java took her course inside with all due caution. Caution was observed in her equipment, management, and speed. The vigilance of her lookout is proved. The pilot at only a mile below the school-ship had scanned the whole inside passage and found it clear. She had all appliances in readiness for manœuvring rapidly, and her speed, when she discovered the schooner, was not over two knots. All this is indeed admitted.

The Circuit judge assumes that the Java might reasonably have expected to meet the schooner where, and as she in fact met her. This was an error arising from neglect to observe the proved fact, that the pilot, only ten minutes before,

had scanned the whole passage and found it clear. There was an extreme improbability that any vessel could come into the passage unobserved. Any vessel under sail must have been seen, and any vessel, except upon the exact line taken by the schooner, would have been seen. The collision was impossible, except by exactly such a combination of circumstances as occurred. Such a combination, so improbable, that the Java was not bound to govern her course by anticipating it.

The Java took all proper measures, with all diligence, after discovering the schooner. Upon this point no fact is found against the Java in the Circuit Court. In every case cited, where a steamship has been charged, it has been for specific fault. In the case of the Java every fault charged is disproved. So far as the Java is concerned, the case is one of inevitable accident.

Then, on the other hand, the schooner was herself in fault. She should have sooner discovered the steamer. She had no lookout. This was in itself negligence. The Java could have been seen more readily than the schooner. The schooner was, moreover, in fault in thrusting herself helpless in the way of the steamer from behind the schoolship.

The learned judge, who gave the opinion of the Circuit Court, while denying the position taken before him by the libellants' counsel, that the Java having taken (as was assumed) an unusual course, yet falls into a mistake almost as considerable. His view, that a vessel taking an unusual course, even for her greater convenience, does it *"at her peril,* and is bound to see that she does it safely," and bound to proceed *"so* slowly and with *so* much vigilance" as to make accident absolutely impossible—is a view entirely too broad. It would oblige a vessel to follow what from her structure or from the circumstances in which she might happen to be would be a most inconvenient course, though one commonly used by other vessels, or by herself in other circumstances, and make her liable for even inevitable accident.

Mr. Justice BRADLEY delivered the opinion of the court.

If the expressions of the learned judge who delivered the opinion of the Circuit Court, in answer to the argument that the Java pursued an unusual course in attempting to go to her dock by the passage to the right of the school-ship, and which have been commented on at the bar, mean that she was bound to use more than ordinary precaution by reason of taking an unusual route, they are correct; but if they mean that she was liable at all events, whatever precautions she took, we cannot concur in the position. A small vessel might have been concealed by the school-ship, and might have come out upon the Java unawares, whichever side of the school-ship she had gone. It was shown by the evidence that the Cunard steamers had before passed in by the same route which the Java took, and it seems on this occasion to have been the preferable one, inasmuch as the Java, from her great length, could not, by herself, have turned into her dock had she taken the other route and gone around the vessels lying at anchor. She had a perfect right to go by the passage which she took, as much so as the James McCloskey had to come out by that passage; and in doing so, she was not liable at all events; she was only bound to use that degree of care and precaution which the particular circumstances of the case demanded. There is not the slightest evidence that in this regard anything was wanting, or that there was any lack of skill or vigilance on the part of the pilot and crew of the Java.

On the other hand, the James McCloskey was not without fault. She had been towed down from one of the East Boston wharves to the school-ship, and there discharged her tug, and floated along slowly with the tide, without having her sails up (her crew being engaged in hoisting sail), without being under control, and entirely concealed from the view of the Java by the intervention of the school-ship. She came out from behind the latter without any notice or warning. If either ship is to blame, we think the blame rests with her, rather than with the Java.

It is contended that the Java ought to have anticipated

the possibility of a small vessel lying behind the school-ship. The answer is, that she took every reasonable precaution which the circumstances required. She proceeded very slowly, only two knots an hour; she had lookouts posted in every proper place; as soon as the schooner was seen, she took every means in her power to stop and back and avoid the collision. How could she anticipate the possibility of a vessel lying behind the school-ship, without sails hoisted, incapable of being seen in a bright, clear day, drifting along helplessly with the tide, ready to drop under the Java at her approach? Is it not applying too severe a rule to the Java, to require her to anticipate all this, and to require the schooner to anticipate nothing?

It seems to us that if this was not an inevitable accident, so far as the Java was concerned, it would be very difficult to imagine a case of inevitable accident not caused by external force, as of winds and waves.

The decree of the Circuit Court is REVERSED, with directions to

DISMISS THE LIBEL.