### 6950

## McMEEKIN v. CENTRAL CAROLINA POWER CO.

1. INJUNCTION—NUISANCE.—Erection of .a dam across a navigable stream will not be enjoined merely because it will be a public nuisance.

2. IBID.—CONDEMNATION—CORPORATIONS.—The charter of the Central Carolina Power Company, providing that it shall, on demand, sell or furnish power to any person or corporation for manufacturing or lighting purposes on payment of the usual rates or charges, makes it a public corporation, and the Legislature, under the provisions of · section 34 of Article III of the Constitution, may empower it to condemn land of private persons to be flooded by reason of a dam to be erected across a river; that the corporation will not comply with this provision in its charter cannot be considered on application to enjoin the condemnation.

Petition in the original jurisdiction of this Court by John C. McMeekin for injunction against Central Carolina Power Company, to injoin condemnation of lands under its charter. The petitioner shows to the Court:

1. "That the respondent is, and at the times herein mentioned was, a corporation created and existing under the laws of the State of South Carolina; that said respondent under and by virtue of an act of the General Assembly of South Carolina entitled 'An act to ratify and confirm the charter of the Central Carolina Power Company, granted by the Secretary of State on the 17th day of February, 1906, and to confer additional powers on said company,' approved 24th day of February, 1906, was invested and is still invested with the power, among other powers granted, to construct and maintain a dam or dams in and across Broad River, at a point between Frost's Mill and Alston, together with the right, power and privilege to acquire by purchase, or by condemnation proceedings, all lands which may be overflowed by the construction and maintenance of such dam or dams as may be constructed and maintianed under the power and authority conferred by said act.

2. "That your petitioner is the owner, in fee simple, and is now and was possessed at the times herein mentioned, of the following described real estate, to wit: 'All that tract or parcel of land situate in the County of Fairfield, State of South Carolina, on Broad River, containing 33.79 acres, bounded on the north by track of Southern Railway, on the east by lands of Metz, on the south by Broad River, and on the west by lands of Yarborough.'

3. "That heretofore, to wit, on the        day of       , 1908, your petitioner was served with notice by said respondent that the above described tract or parcel of land, the property of your petitioner, was required by it for the purpose of overflowing and sobbing the same by and with back water created by the erection of a dam across Broad River, to which notice your petitioner replied in writing on the        day of        , 1908, signifying his refusal to consent to an entry thereon by said respondent.

4. "That your petitioner now learns that notwithstanding said refusal said respondent is prosecuting condemnation proceedings and is preparing to have a jury empanelled for the purpose of ascertaining the compensation to be paid your petitioner for the use of said lands.

5. "That your petitioner, upon information and belief, alleges that said act of the Legislature ratifying and confirming the charter granted by the Secretary of State on the 17th day of February, 1906, and conferring additional powers, of and on the Central Carolina Power Company, respondent herein, is illegal and void, and of no effect in that (a) It provides for the erection of a dam across a navigable stream, contravening section 28, of article I, of the Constitution of the State of South Carolina, which provides, 'All navigable waters shall forever remain public highways free to the citizens of the State and the United States without tax, impost or toll imposed; and no tax, toll, impost or wharfage shall be imposed, demanded or received from the owners of any merchandise or commodity for the use of shores or any wharf erected on the shores or in or over the

33—80

waters of any navigable stream unless the same be authorized by the General Assembly'; also contravening section 1, article XIV, which provides, "The State shall have concurrent jurisdiction on all rivers bordering on this and any other State bounded by the same, and they, together with all navigable waters within the limits of the State, shall be common highways and forever free, as well to the inhabitants of this State as to the citizens of the United States, without any tax or impost therefor, unless the same be expressly provided for by the General Assembly.' (b) Said act is special legislation, in contravention of section 34, of article III, of the Constitution of South Carolina, and is not permissible under the proviso of section 2, article IX, of the Constitution of South Carolina. (c) Said act permits the acquiring by condemnation of private property for private purposes without the consent of the owner in contravention of so much of section 17, article I, of the said Constitution as provides, 'Private property shall not be taken for private use without the consent of the owner.'

6. "That your petitioner is informed and believes that the said Central Carolina Power Company, respondent herein, will condemn the property of your petitioner herein described and deprive him of the free use and enjoyment thereof, unless restrained by the order of this Court.

"Wherefore, your petitioner prays that the respondent be enjoined and restrained from further prosecuting proceedings for the assessment of compensation for use of said property, and for such other and further relief as may be just; and your petitioner will ever pray," etc.

The Reporter has not been able to procure a copy of the return.

*Mr. D. W. Robinson,* for petitioner, cites: *Navigable streams:* 42 S. C., 151; 136 N. C., 606; Gould on Waters, 67; Code 1902, 1335; 25 Stat., 352. *Obstructing a navigable stream is a nuisance:* 30 S. C., 545; 28 S. C., 27; 63

S. C., 361. *Such stream can only be obstructed by obtain-ing permission from both State and National Governments:* 11 L. R. A., 105; 190 U. S., 106; 6 Fed. R., 805, 814; 30 Stat. U. S., 1151. • *What is a public use?* 70 L. R. A., 482; 15 Cyc., 581; 143 U. S., 517; 85 Pac., 667; 63 Cen. L. Jour-nal, 225; 75 Vt., 235; 28 Am. Dec., 417; 3 Barb., 42; 35 Mich., 333; 18 N. J. Eq., 54; 10 Wis., 351; Cooley Con. Lim., 771.

*Mr. William H. Lyles,* contra, cites: *Is damming river pro-hibited by sec. 28, art. I, or sec. 1, art. XIV, of Constitution?* 113 U. S., 205; 125 U. S., 1. *Does the charter of defendant permit condemnation?* 66 S. C., 439; 77 S. C., 169; 76 S. C., 1, 99.

July 13, 1908. The opinion of the Court was deliv-ered by

MR. JUSTICE GARY. This is an application to the Court, in the exercise of its original jurisdiction, for an order enjoining the defendant from taking the land of the peti-tioner under condemnation proceedings to the extent of backing water upon it on the completion of the dam across Broad River, which the defendant contemplates building as the basis for constructing an electrical plant.

The facts will fully appear by reference to the petition and the return to the rule to show cause, which will be set out in the report of the case.

The first ground upon which the petitioner relies for an injunction is: that the dam will obstruct a navigable stream, in contravention of section 28, art. I, and section 1, art. XIV, of the Constitution of this State.

The obstruction of a navigable stream is a public nuisance and the remedy is by indictment, unless the person instituting proceedings on the civil side of the Court can show special or peculiar damages, differing in kind from those to which all others in common with him are exposed. *Carey* v. *Brooks,* 1 Hill, 365; *State* v. *Rankin,* 3 S.

C., 438; *Hellams* v. *Switzer,* 24 S. C., 39; *Steamboat Co.* v. *R. R. Co.,* 30 S. C., 539, 9 S. E., 650; *Steamboat Co.* v. *R. R. Co.,* 46 S. C., 327, 24 S. E., 337; *Baltzeger* v. *R. R.,* 54 S. C., 242, 32 S. E., 358. Thus showing that the obstruction of a navigable stream cannot be declared a public nuisance and abated at the instance of a private party in a civil action merely on the ground that it is a public nuisance, as contended by this petitioner; but that in such case indictment is the appropriate remedy.

The aid of the Court in the exercise of its chancery powers cannot, therefore, be invoked to restrain the defendant from doing an act which, if allowed to be completed, the petitioner would not have the right to demand should be declared to be illegal in a civil action.

The second ground set forth in the petition is that the said act is special legislation, in contravention of section 34, art. III, of the Constitution, and is not permissible under the proviso of section 2, art. IX, of the Constitution, which is as follows: *"Provided,* That the General Assembly may by a two-thirds vote of each house, on a concurrent resolution, allow a bill for a special charter to be introduced, and when so introduced, may pass the same as other bills."

The petitioner's attorneys have not discussed this ground, and we deem it only necessary to refer to the *proviso* to show that this ground can not be sustained.

The third ground upon which the appellant relies is: That the act permits the taking of private property, for private purposes, without the consent of the owner under condemnation proceedings, in contravention of so much of section 17, art. I, of the Constitution, as provides that private property shall not be taken for private use without the consent of the owner.

Section 5 of the act incorporating the defendant provides, "that the said power company shall, on demand, sell and furnish power to any person or corporation for manufacture or lighting purposes, upon such persons or corporations paying the usual rates or charges for same."

In *Talbot* v. *Hudson,* 16 Gray (Mass.), 417, the Court announced the following doctrine: "It has never been deemed essential that the entire community, or any considerable portion of it, should directly enjoy or participate in an improvement or enterprise in order to constitute a public use within the true meaning of these words as used in the Constitution. Such an interpretation would greatly narrow and cripple the authority of the Legislature so as to deprive it of the power of exerting a material and beneficial influence on the welfare and prosperity of the State. In a broad and comprehensive view, such as has been heretofore taken of the construction of this clause of the Declaration of Rights, everything which tends to enlarge the resources, increase the industrial energies and promote the productive power of any considerable number of the inhabitants of a section of the State, or which leads to the growth of towns and creation of new sources for the employment of private capital and labor, indirectly contributes to the general welfare and to the prosperity of the whole community. It is on this principle that many of the statutes of this commonwealth by which private property has heretofore been taken and appropriated to a supposed public use are founded. Such legislation has the sanction of precedents coeval with the origin and adoption of the Constitution, and the principle has been so often recognized and approved as legitimate and constitutional that it has become incorporated into our jurisprudence."

This language is quoted with approval in the case of *Boyd* v. *Granite Co.,* 66 S. C., 433, 45 S. E., 10.

The petitioner's attorney contends "that the real purpose of the corporation was to generate and sell power for manufacturing purposes, or to use such power to operate its own manufacturing enterprise." They also say: "In the case at bar it will not do to say that the corporation is one for public uses, because of the provision in sec. 5 of its charter, that is. 'shall on demand sell and furnish power to any person or corporation for manufacture or lighting purposes upon such person or corporation paying the usual rates or charges for

same.' This provision was doubtless inserted for the purpose of giving color to the argument in behalf of its public purpose. But, as shown above, it is impossible with this kind of company to serve the public generally, or an indefinite number of persons, as the ability to serve is used and exhausted in serving a small limited number of individuals or enterprises."

The language of sec. 5 of the act plainly imposes upon the defendant a public duty, and the petitioner assumes that the defendant will not comply with the requirements of the statute. It would be prejudging the case to decide that question at this time.

It must also be borne in mind that it does not appear from the allegations of the petition that more land will be required if the electric power generated by the petitioner should be devoted exclusively to the use of the public than will be necessary in case it also supplies electric power to private persons.

Having reached the conclusion that the petitioner was incorporated for a public purpose, it is only necessary to cite the case of *Manufacturing Co.* v. *Light and Water Co.,* 76 S. C., 95, 56 S. E., 664, to show that the land can be taken under condemnation proceedings.

An order dismissing the petition has already been filed.