## THE MANNA-HATA.

### (District Court, D. Maryland. January 6, 1912.)

COLLISION (§ 91*)—STEAMER AND SCHOONER MEETING—NEGLIGENT LOOKOUT.

A collision in Chesapeake Bay at night between a steamer going down and a meeting schooner *held* due to the fault of the steamer in failing to see the schooner and in changing her course while passing another vessel, while the schooner properly kept her course, and was not in fault.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 187–192; Dec. Dig. § 91.*

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

In Admiralty. Suit for collision by John Kennard, master of the schooner Edward L. Martin, against the steamer Manna-Hata, and cross-libel by claimant of steamer. Decree for libelant.

Arthur D. Foster and John Henry Skeen, for libelant.

Arthur George Brown, R. E. Lee Marshall, and Burlingham, Montgomery & Beecher, for respondent.

ROSE, District Judge. The schooner Edward L. Martin and the steamer Manna-Hata were in collision. Each blamed the other. The schooner libeled the steamer. The steamer filed a cross-libel against

the schooner. The libel and cross-libel have been consolidated. The vessels came together at half past 11 on the night of September 14, 1911. The moon had arisen about an hour and a half before. The sky was partly overcast. The moon was sometimes obscured by clouds. Sometimes it emerged from behind them. The tide was at the end of the flood or the beginning of the ebb. The wind was from the south. It was blowing from 10 to 15 miles an hour. The weather conditions had no part in bringing about the collision. Both vessels displayed proper lights. At the point at which they came together the navigable channel of the Chesapeake is several miles wide. A schooner, the Ruth L. Price, was the only other vessel anywhere in the neighborhood. The steamer was bound down the bay to the Capes of the Chesapeake. It was on its regular voyage from Baltimore to New York by the outside route. The schooner was bound up the bay from the Rappahannock river to Baltimore. Until the maneuvers which preceded the collision, the steamer was on a south by east course. The schooner on a north by west. When they actually came together, the steamer was headed about due east. The schooner's course at that moment is one of the questions in dispute. The steamer is the burdened vessel. It says it was not in fault and that the schooner was.

It alleged: First. The collision would not have taken place had not the Martin changed its course to starboard. Second. The schooner should have changed its course by going to port. Third. The Martin hid itself from the steamer in the wake of the Price until the Martin and the steamer were dangerously near together.

These allegations will be considered in the order in which they have been stated.

First. Before the schooner is said to have gone to starboard, it had admittedly been on a north by west course. It was running wing and wing before the wind. Any substantial change of course would have caused the sails to jibe. They did not do so. Only one witness says that the schooner's course was altered at any time prior to a few seconds before the collision. This witness was the second officer of the steamer. The fact that its sails did not jibe shows that he must have been mistaken. His testimony as to the time at which the change of course took place is contradicted by his captain. The latter was the only other witness for the steamer. He impressed me very favorably. He had gone to his room some 15 minutes before the collision took place. In trying to avoid the schooner, the second officer then in charge of the steamer had put it on half speed. The captain at once went to the pilot house. He says that at that time the schooner was still on a north by west course. In a minute or less the collision took place. It is true that the captain thinks that in that brief space, measured by seconds, the schooner changed its course to starboard. He believes that, if such change had not taken place, the steamer would have safely crossed the schooner's bow. In point of fact, the bow of the schooner struck the steamer amidship. The former lost its bow sprit and forward rigging. Its stem was wrenched. Its seams opened. It shortly afterwards sank. It was subsequently raised. I believe

that the steamer's captain is mistaken in supposing that the schooner changed its course. If it had, its sails would have jibed. What the captain saw was probably the result of the collision, and not·its cause. The moment the schooner's bow sprit touched the steamer the stem of the former would have been thrown to starboard. I find, therefore, that the schooner held its course.

Second. It is said that, if the schooner had changed her course to port, the collision would not have taken place. After the second officer of the steamer saw the schooner, he brought the steamer to half speed. Less than a minute before the collision the steamer was put at full speed. It was impossible for the schooner to foretell what the steamer's speed would be. The steamer might have continued at half speed. If it had, and the schooner had gone to port, the chances of a collision would have been increased by such change of course. It was the duty of the schooner to keep its course. The circumstances under which a vessel can be held in fault for adhering to the rules are very exceptional. They do not exist in this case.

Third. The steamer says that the Martin was sailing in the wake of the Price. The latter's sails were also winged out. The steamer contends that the Martin was hidden from it by the Price. The Martin says that it was not in the wake of the Price, but was three-quarters of a mile to the eastward of the Price, and not more than one or two boat-lengths behind it. The steamer's claim in this respect rests solely upon the testimony of its second officer. He says: That when he first saw the Price he made out its green light about 1½ points on his starboard bow. That he put his helm to starboard, throwing the bow of his vessel to port—that is, to the eastward. The Price threw her bow to port, jibed and ran off to the westward. That, when the steamer passed the Price, there was about half a mile distance between them. That some time after making out the green light of the Price he made out the red light of the Martin. He then put his helm still farther to starboard, throwing the steamer's head around until its course became substantially easterly. He brought the steamer to half speed. After that the captain came on deck and a minute later the collision took place.

Obviously, if this account be correct and the Martin was originally in the wake of the Price, it must have been a considerable distance behind it—half a mile or more. Under such circumstances the collision could not have happened, all the conditions being as described by the second officer, unless the Martin had changed its course. He says it did. I have already stated the reasons which convince me that it did not. It is unnecessary, therefore, to inquire whether the Martin would have been in fault had she been sailing up the bay in the wake of the Price. The learned, able, and industrious advocates for the steamer frankly admit that they have not been able to find any case in which a sailing vessel has been held in fault merely because she happened, although half a mile or more behind another vessel, to be sailing in its wake. In narrow channels one vessel must sail in the wake of another. In wide channels the sailing vessel cannot tell at what angle other craft may approach. It is impossible for it so

to adjust its position with reference to a vessel preceding it as to insure that it will always be in the view of other ships approaching.

If the Martin had been hidden from the steamer by the Price, the Martin would not have been in fault. Nevertheless, the steamer might have been free from blame. If the Martin had been concealed from the steamer by the Price until it was too late for the steamer to avoid the collision, their coming together might have been from the standpoint of the steamer an unavoidable accident. The Java, 14 Wall. 189, 20 L. Ed. 834. The facts, however, as already stated, show that the Martin was not hidden by the Price. For some reason the steamer appears not to have seen the Price until she came near enough to make the officer in charge of the former fearful of a collision with the latter. His attention was absorbed in avoiding the Price. If he had seen the Martin before, he failed to recollect that it was in the vicinity. If he had not previously noticed it, he was too absorbed in the Price to see it until he had brought his ship on a course very nearly at right angles to that upon which it had been. When he saw the Martin, he was headed directly for it. He did not stop and reverse because he feared he had not sufficient time to arrest the speed of his ship by so doing, and because, if he had attempted it, the bow of the steamer would have been thrown to starboard. In his judgment his best chance of escaping a collision was to throw the head of his vessel still farther to port. This he did.

I find that the schooner was not in fault, and the steamer was. The cross-libel of the steamer is dismissed, with costs. If the parties cannot agree upon the damage to the schooner, it may have the usual decree for a reference.