**EVERGREEN INTERNATIONAL, S.A., Plaintiff,**

**v.**

**MARINEX CONSTRUCTION COMPANY, INC. and Norfolk Dredging Company, Inc., Defendants.**

**C.A. No. 2:04–22351–PMD.**

United States District Court, D. South Carolina, Charleston Division.

March 2, 2007.

---

Gordon D. Schreck, Julius H. Hines, Sean Houseal, Buist Moore Smythe and McGee, Charleston, SC, for Plaintiff.

Paul Francis Tecklenburg, Rivers Thomas Jenkins, III, Tecklenburg Law Firm, Charleston, SC, David Harlin Sump, Crenshaw Ware and Martin, Norfolk, VA, for Defendants.

## ORDER

DUFFY, District Judge.

Plaintiff Evergreen International, S.A. ("Evergreen") brought this claim under the general maritime law of the United States for damage to its vessel in navigation, and for other consequential losses and damages, resulting from that vessel's allision with a submerged obstruction in the navigable waters of the United States. This matter is now before the court on Defendant Marinex Construction Company, Inc. and Defendant Norfolk Dredging Company, Inc.'s ("Defendants") motion for partial summary judgment. For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

On February 14, 2002, the United States Army Corps of Engineers awarded dredging contract DACW60–02–C–0002 ("the Dredging Contract") to Defendant Marinex. The Dredging Contract was for "new work and maintenance dredging" in the Cooper River between Shipyard Creek and the turning basin above the North Charleston Container Terminal ("the Dredging Project"). On February 19, 2002, Marinex entered into a subcontract with Norfolk Dredging Company, Inc. ("NDC") for performance of a portion of the Dredging Project. The subcontract, which took the form of a two-page letter agreement, required NDC to "perform all work in accordance with U.S. Army Corps of Engineers Plans and Specifications."

On September 19, 2002, NDC laid a submerged pipeline across the marked federal channel at about the upper of the "Daniel Island Bend" section of the Cooper River. In the early morning of September 30, 2002, a 965 foot container vessel owned by Plaintiff Evergreen International, S.A. ("Evergreen"), the M/V EVER REACH, arrived at Charleston Harbor. The M/V EVER REACH continued its transit from Charleston Harbor up the Cooper River toward the North Charleston Container Terminal, which was upstream of NDC's dredging operation. In the course of this passage, the M/V EVER REACH struck NDC's submerged dredge pipeline, gashing its outer shell plating and spilling bunker fuel into the Cooper River.

Evergreen seeks recovery from both Marinex and NDC, alleging thirteen individual causes of action. These causes of action are entitled: (1) Obstruction to Navigation; (2) Maritime Negligence; (3) Public Nuisance; (4) Pennsylvania Rule Violation; (5) [Violation of] Refuse Act of 1899; (6) Maritime Indemnity; (7) Maritime Contribution; (8) Subrogation under the FWPCA; (9) Subrogation under OPA 90 Section 1002(1)(b); (10) Subrogation under OPA 90 Section 1015(a); (11) Contribution under OPA 90 Section 1009; (12) Subrogation under CERLA Section 112(c)(2); and (13) Declaratory Relief.

In the motion currently before the court, Defendants request that the First, Third, Fourth, and Fifth causes of action be dismissed for failure to state a proper claim or for lack of evidence. Evergreen concedes that the Amended Complaint does not allege facts which support the Fifth cause of action for violation of the Refuse Act of 1899; accordingly, the court dismisses this cause of action without further consideration. Evergreen opposes Defendants' motion for summary judgment as to the First, Third, and Fourth causes of action.

## STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether there is a genuine issue of material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Id.* "[W]here the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

## DISCUSSION

### (1) First and Third Causes of Action— "Obstruction to Navigation" and "Public Nuisance"

Plaintiff asserts in the Amended Complaint that Defendants violated maritime law by leaving submerged pipeline sections in the Cooper River, thereby creating an unlawful obstruction. (Amended Complaint, ¶¶ 23–26, First Cause of Action.) Plaintiff further asserts that by leaving submerged, unmarked pipeline sections in the Cooper River, Defendants created a nuisance to the public engaged in lawful navigation. (Amended Complaint, ¶¶ 32–35; Third Cause of Action.) In these causes of action, Plaintiff seeks to recover damages for the injuries caused to it by this unlawful obstruction and/or public nuisance.

Defendants argue that these two causes of action fail as a matter of law because there is no federal common law or statutory private remedy for public nuisances or obstructions in the navigable waters of the United States. In support of this contention, Defendants cite the case of *Willamette Iron Bridge Co. v. Hatch*, in which the United States Supreme Court determined there was "no common law of the United States which prohibits obstructions and nuisances in navigable rivers." 125 U.S. 1, 8 S.Ct. 811, 31 L.Ed. 629 (1888). As such, the *Hatch* Court explained that "[t]here must be a direct statute of the United States in order to bring within the scope of its laws, as administered by the courts of law and equity, obstructions and nuisances in navigable streams within the states." *Id.* In response to the ruling in *Hatch*, Congress enacted the Rivers and Harbors Appropriations Act of 1899 which provided the federal government with the means to require removal of obstructions from navigable waters. In *California v. Sierra Club*, the Supreme Court found that there is no "indication of legislative intent, explicit or implicit, [within the Rivers and Harbors Appropriations Act] either to create such a [private] remedy or to deny one." 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981). The Supreme Court held that this silence on the remedy question serves to confirm "that in enacting the Act, Congress was concerned not with private rights but with the Federal Government's ability to respond to obstructions on navigable waterways." *Id.* As such, the *Sierra Club* Court found that Congress did not intend to create a private remedy for unlawful obstructions in navigable waterways. Accordingly, because there is no federal common law prohibiting obstructions and public nuisances in navigable waterways and because the RHA does not provide a private cause of action to remedy such obstructions or nuisances, Defendants argue that Plaintiff's First and Third causes of action fail to state a claim upon which relief may be granted.

■ The court does not agree. While the *Hatch* Court found that federal common law did not provide a private remedy to an obstruction to navigation, the Court went on to note that such a law might exist under "the maritime law, administered by the courts of admiralty and maritime jurisdiction." *Id.* The Court also noted that "[s]uch obstructions and nuisances are offenses against the laws of the states within which the navigable waters lie, and may be indicted or prohibited as such." *Id.* Accordingly, regardless of whether Plaintiff has stated a public nuisance or obstruction cause of action under *federal law*, Plaintiff has stated a viable claim if such remedies exist under the maritime law or the laws of South Carolina.[1]

### A. "Unlawful Obstruction" Under Maritime Law

■ Under maritime tort law, liability for allisions, and other types of marine

---

1. In this case, the court has original jurisdiction over Plaintiff's maritime claims pursuant to the admiralty jurisdiction of federal courts. 28 U.S.C.A. § 1333(1) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."). Pursuant to the supplemental jurisdiction statute, 28 U.S.C.A. § 1367, this court has jurisdiction to hear state law causes of action arising from the same case or controversy as the maritime claims. *Id.* ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Accordingly, the court has supplemental jurisdiction to consider a South Carolina common law public nuisance claim.

686

casualties, is based upon a finding of fault that caused or contributed to the damage that occurred. *Folkstone Maritime, Ltd. v. CSX Corp.*, 64 F.3d 1037, 1046 (7th Cir.1995); *see The Java*, 81 U.S. (14 Wall.) 189, 20 L.Ed. 834 (1871) ("[C]ollision liability is based on fault; the mere fact of impact has no legal consequence."). For it is axiomatic in admiralty cases that "[t]he liability for damages is upon the ship or ships whose fault caused the injury." *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 136, 22 L.Ed. 148 (1874); *see Stainback v. Rae*, 55 U.S. (14 How.) 532, 538, 14 L.Ed. 530 (1852). With respect to the first of these elements, fault, the standard of care against which fault is determined is derived from general concepts of prudent seamanship and reasonable care, statutory and regulatory rules governing the movement and management of vessels and other maritime structures, and recognized maritime customs and usages. *Folkstone Maritime*, 64 F.3d at 1046 (citing 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 14–2 (2d ed.1994)). Liability analysis often begins with a review of applicable statutes or regulations; however, liability may also be imposed in the absence of a statutory violation if negligence was involved. *Id.*

■ Under the RHA, Congress has expressly declared that "[t]he creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any waters of the United States is prohibited...." 33 U.S.C. § 403 (1899). This duty is said to extend to the entire width of the navigable waterway and is not limited to the mid or dredged channels of the river. *See Orange Beach Water, Sewer And Fire Protection Authority v. M/V Alva*, 680 F.2d 1374, 1382 (11th Cir.1982). Moreover, the duty to maintain a free and navigable channel is breached whenever a structure not initially an obstruction becomes one through improper maintenance. *Id.* at 1383.

■ A breach of the statutory duties created by the RHA supports a finding of fault under maritime law of allisions. As such, while the RHA does not provide a private remedy for obstructions to navigation, maritime law provides that where an obstruction created in violation of the RHA causes an allision, the injured vessel may recover against the party who created the obstruction. *See Peoples Natural Gas Co. v. Ashland Oil, Inc.*, 604 F.Supp. 1517, 1527–28 (D.C.Pa.1985). In this case, considering the evidence in the light most favorable to Evergreen, Defendants' pipeline created an obstruction to navigation in violation of the RHA. The evidence also supports Evergreen's assertion that this pipeline was the cause of the allision and the resulting injury to Evergreen. As such, the court finds that Evergreen's First cause of action states a claim for damages caused by an unlawful obstruction under maritime law.

**B. Public Nuisance Under State Law**

■ The South Carolina Supreme Court has explained that there can be no doubt that an obstruction of a highway is a public nuisance and, because all navigable waters are public highways, "[t]he obstruction of a navigable stream is a public nuisance." *McMeekin v. Central Carolina Power Co.*, 80 S.C. 512, 61 S.E. 1020, 1023, 128 Am.St.Rep. 885 (S.C.1908); *see also South Carolina Steamboat Co. v. Wilmington, C. & A.R. Co.*, 46 S.C. 327, 24 S.E. 337 (S.C.1896). Generally, "the remedy [for a nuisance created by an obstruction to navigation] is by indictment, unless the person instituting proceedings on the civil side of the court can show special or peculiar damages, differing in kind from those to which all others in common with him are exposed." *McMeekin*, 80 S.C. at 515, 61 S.E. 1020. A person who suffers such special damages to personal property may recover for those damages pursuant

to a public nuisance cause of action. *Overcash v. South Carolina Elec. and Gas Co.,* 364 S.C. 569, 614 S.E.2d 619 (S.C.2005) (holding that, under the common law, an individual who suffers particular injury to his property as a result of an obstruction to the navigable waterway has a public nuisance cause of action for damages); *Drews v. Burton & Co.,* 76 S.C. 362, 57 S.E. 176 (1907) ("When a person sustains a special injury . . . arising from the obstruction of a navigable stream, he is entitled to recover damages, on the ground that such obstruction constitutes a nuisance . . . at common law."); *Carey v. Brooks,* 1 Hill (SC) 365 (S.C.App.1833) (where obstruction to navigable waters caused a delay in the delivery of the plaintiff's lumber to a third party, resulting in damages, plaintiff could recover damages in public nuisance action). ·

■ In this case, Evergreen alleges that the submerged pipeline created an obstruction to the navigable waters of the Cooper River, which caused it particularized harm. (Amended Complaint, ¶¶ 33–35.) Accordingly, the court finds that Evergreen's Third cause of action states a viable common law public nuisance claim for damages under South Carolina law.

Defendants also argue that summary judgment on the public nuisance claim is appropriate because "the active use of a dredge pipeline, in accordance with a Corps of Engineers dredging contract, is not and cannot be considered a public nuisance." (Motion at 5.) The court disagrees. Defendants correctly state that an obstruction that has been approved by the government is not a public nuisance; however, the dredging project at issue, which was undoubtably approved by the government, involved no *necessity* of obstructing the Cooper River. Further, the government, in planning the dredging project, did not contemplate or intend an impairment of the navigability of the River.[2] As such, the fact that the obstruction was created during the implementation of a government contract does not insulate the contractor from liability. *See Converse v. Portsmouth Cotton Oil Refining Corp.,* 281 F. 981 (4th Cir.1922) (holding that where contractor acted under a contract with the United States for dredging work in a harbor, the fact that the contract was for government work and was performed to the satisfaction of the engineer in charge did not to relieve the contractor from liability for damage caused by filling up a creek with dumped material, where such damage was not necessarily incidental to the work, but other dumping grounds were available, the use of which would have avoided the injury). Accordingly, the court denies Defendants' motion for summary judgment as to Evergreen's Third cause of action.

**(2) Fourth Cause of Action—The "*Pennsylvania* Rule".**

The court begins its analysis with a brief description of the *Pennsylvania* Rule of Maritime Law:

■ As in other tort contexts, in order for liability to be imposed in a maritime allision case, the fault must be a proximate cause of the injury. Therefore, the fault committed by the operator of the instrumentality (in this case, the dredge pipeline) must be a contributory cause of

---

**2.** Section 1.5.7 of the Dredging Contract makes clear that the government "will not undertake to keep the channel free from vessels or other obstructions" during the dredging and requires the contractor to "conduct the work in such a manner as to obstruct navigation as little as possible." Further, the Contract requires the contractor to move its equipment "on the approach of any vessel to such extent as may be necessary to afford a practicable passage."

the allision. *The Java*, 81 U.S. (14 Wall.) at 193, 198–99, 20 L.Ed. at 834; *The Farragut*, 77 U.S. (10 Wall.) 334, 338–39, 19 L.Ed. 946 (1870). Generally, common-law proximate cause analysis is applicable, and, if the contractor was not a contributory cause of the allision, no liability will follow. However, in cases in which statutes and regulations are implicated, the causation analysis in admiralty cases is eased by "the *Pennsylvania* Rule." [3] This rule provides that a vessel shown to be in breach of a statute or regulation has the burden of proving not only that the fault probably was not one of the contributory causes of the accident, but also that it could not have been a contributory cause. *The Pennsylvania*, 86 U.S. (19 Wall.) at 136, 22 L.Ed. 148 This rule does not establish fault; rather, it shifts the burdens of proof and persuasion on causation to the party who violated a legislative mandate. *Folkstone Maritime, Ltd.*, 64 F.3d at 1047. This rule applies equally to allisions as it does to collisions. *Orange Beach Water, Sewer & Fire Protection Auth.*, 680 F.2d at 1381.

In this case, Evergreen asserts a "violation" of the "Rule of *The Pennsylvania*" as a basis for its Fourth cause of action. (Amended Complaint, ¶ 38.) Evergreen asserts that Defendants failed to comply with the Corps' requirements as set forth in the Dredging Contract,[4] and that this failure to comply with these requirements shifts the burden of proof to Defendants to demonstrate that said failure could not have contributed to the damages sustained by Evergreen under the "*Pennsylvania* Rule." Therefore, Evergreen seeks "judgment against [Defendants] for the full amount of damages caused by [Defendants'] failure to comply with the Dredging Contract, in violation of the Pennsylvania Rule." (Amended Complaint, ¶ 40.)

Defendants argue that the *Pennsylvania* Rule is only implicated by a showing of some statutory fault, i.e. the "breach of one of the Rules of Navigation or of some other statutory norm." (Motion at 7, citing "The Law of Admiralty", Gilmore and Black, 2d Ed.) Defendants claim that an alleged breach of the Corps' requirements

---

3. In the case *The Pennsylvania*, a collision occurred in a very dense fog between a sailing bark and a large steamer. 86 U.S. (Wall.) 125, 22 L.Ed. 148 (1873), *overruled in part on other grounds, United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). The bark, which was moving slowly was ringing a bell as a fog signal, in violation of an act of Congress for preventing collisions at sea, which required that "sailing vessels under way shall use a *fog horn*," and "when not underway shall use a *bell*." The Supreme Court held that the bark was clearly in fault for failing to blow a fog horn. In determining whether this fault contributed to the collision, the Court held that because the "ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, ... the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." *Id.*

4. The Dredging Contract issued by the Corps of Engineers required Defendants to place submerged pipeline "on the channel bottom where a pipeline crosses a navigation channel and while submerged, the top of the pipeline and any anchor securing the pipe shall be no higher than the required project depth for the navigation channel in which the pipe is placed." (Dredging Contract § 3.3.2.2.1.) The Dredging Contract further required that "the location of the entire length of submerged pipeline ... be marked with signs, buoys, lights, or flags as required by the USCG and as approved by the Contracting Officer." (Dredging Contract § 3.3.2.2.3.) The Amended Complaint alleges that Defendants violated these Corps requirements and thereby caused the allision by (1) failing to mark the location of submerged pipelines, (2) failing to ensure that all pipelines were on the channel bottom, and (3) failing to ensure that all submerged pipelines were below the project depth of the navigation channel. (Amended Complaint, ¶ 37.)

in the Dredging Contract does not allege a "statutory fault" as required by the Rule. In the alternative, Defendants assert that a "violation" of the *Pennsylvania* Rule is not a basis for liability; rather, it is merely a procedural rule governing the burden of proof on causation for a negligent allision cause of action. As such, Defendants claim that this cause of action merely duplicates the negligence claim already asserted in the Second count of the Amended Complaint. For these reasons, Defendants assert that the Fourth cause of action fails to state a claim upon which relief may be granted and should be dismissed.

In its Response, Evergreen notes that several courts have held that failure to comply with a term of a permit issued by the Corps of Engineers triggers application of the *Pennsylvania* Rule. (Response at 4, *citing Ranger Ins. Co. v. Exxon Pipeline Co.,* 760 F.Supp. 97 (W.D.La. 1990) (applying Rule where defendant violated Corps' permit requiring that pipeline be maintained at least two feet below bed of bayou) and *Peoples Natural Gas Co. v. Ashland Oil, Inc.,* 604 F.Supp. 1517, 1528 (D.Pa.1985) (applying Rule where defendant failed to maintain its pipeline four feet below the riverbed as required by Corps' permit).) Evergreen argues that there is "no principled reason for distinguishing between an Army Corps permit and the provisions of an Army Corps contract [where] both impose safety regulations intended to protect the public from navigational obstructions." (Response at 4.)

 Although the *Pennsylvania* Rule is generally described as applying only to statutory violations, the court notes that the Rule has been used to shift the burden of proof in many situations in which there

was in fact no statutory violation. In addition to the cases cited by Evergreen in which a violation of a Corps of Engineers dredging permit was deemed sufficient to implicate the *Pennsylvania* Rule, courts have applied the Rule to violations of customary law (*Ira S. Bushey & Sons, Inc. v. United States* 172 F.2d 447 (2d Cir.1949); *The Madison,* 250 F. 850 (2d Cir.1918)), United States Coast Guard regulations (*Afran Transport Co. v. The Bergechief,* 274 F.2d 469 (2d Cir.1960)), and Corps of Engineers building permits and operational regulations (*Folkstone Maritime Ltd.,* 64 F.3d 1037; *Florida E. Coast Ry. v. Revilo Corp.,* 637 F.2d 1060, 1064 (5th Cir.1981); *In re Tug Helen B. Moran, Inc.,* 560 F.2d 527, 529 (2d Cir.1977)). Considering these cases, the court declines to narrowly interpret the Rule as requiring a statutory violation before it may be applied. Rather, the court finds that the *Pennsylvania* Rule applies more generally where a party has violated a known government-established safety requirement. Because the United States Corps of Engineers set forth requirements in the Dredging Contract intended to prevent the very sort of allision that occurred in this case, the court finds that the Defendants' violation of these requirements, if proven, is sufficient to implicate the burden-shifting scheme of the *Pennsylvania* Rule.[5]

 Next, Evergreen concedes that the Rule of *The Pennsylvania* does not provide a cause of action, but asserts that the Fourth cause of action nonetheless properly states a separate count "based on the violations of the dredging contract, rather than on the other acts and omissions which … expose the Defendants to liability for negligence." (Response at 4.)

---

5. The court further notes that the Dredging Contract expressly requires the contractor to comply with the United States Coast Guard's regulations that "submerged pipeline … be marked with signs, buoys, lights, or flags." The violation of such regulations, if established, would clearly implicate the Rule. *See Afran Transport,* 274 F.2d at 475, n. 3.

The court agrees. As discussed above, liability for allisions is based upon a finding of fault that caused or contributed to the damage that occurred. *Folkstone Maritime, Ltd.*, 64 F.3d at 1046. Such fault may be proven either by a defendant's statutory and/or regulatory violations, **or** by a defendant's negligence. *Id.* In this case, Evergreen's Second cause of action asserts that Defendants were at fault through their *negligence*, that is, their failure to use reasonable care under the circumstances. In contrast, the Fourth cause of action alleges that Defendants were at fault through their breach of the Corps' *regulations* as described by the Dredging Contract. As such, the Second and Fourth causes of action allege two different bases for establishing Defendants' fault in the allision.[6] Accordingly, although the caption "*Pennsylvania* Rule Violation" is not an accurate description of the claim, the court finds that the Fourth count does state a separate and valid cause of action. For this reason, the court denies Defendants' motion for summary judgment as to Evergreen's Fourth cause of action.

### CONCLUSION

Granting in part and denying in part Defendants' motion for partial summary judgment, the court hereby **ORDERS** that the **FIFTH** cause of action in the Amended Complaint is **DISMISSED.**

**AND IT IS SO ORDERED.**

---

**6.** The First cause of action, which alleges that the obstruction violated maritime law, also asserts a separate basis for establishing fault.