13033

TWIN CITY POWER CO. v. SAVANNAH RIVER ELECTRIC CO.

(161 S. E., 750)

440

442

*Messrs. George E. O'Conner, E. H. Calloway, T. B. Greneker* and *D. W. Robinson,* for plaintiff,

*Messrs. Grier, Park & McDonald, Hull Barrett & Willingham* and *J. W. Thurmond,* for respondent,

November 26, 1930.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This action was commenced on April 24, 1929, by the Twin City Power Company, a corporation under a charter issued by the Secretary of State of South Carolina in 1900, against the Savannah River Electric Company, a corporation under a charter granted by a special Act of the General Assembly of South Carolina, 35 St. at Large, p. 887, in 1927, for the purpose of enjoining the prosecution of a condemnation proceeding instituted by the Savannah River Electric Company in March, 1929, by which it proposed to condemn certain property of the Twin City Power Company necessary to it in the construction of a dam across the Savannah River in McCormick County. The property proposed to be acquired under said proceeding lies entirely within McCormick County and consists of 27 separate pieces of real estate. (For convenience the plaintiff will hereinafter be referred to as the "power company" and the defendant as the "electric company.") The notice of condemnation was directed to the power company and to D. J. Halpin, trustee, the holder of a mortgage upon the property proposed to be condemned.

Within a short time after the service of the defendant's notice of condemnation, Halpin, the trustee of the mortgage bonds issued by the power company, brought an action in the federal court to enjoin the condemnation proceedings instituted by the electric company; to this action the power company, the owner of the property, was not made a party.

A few days after the institution of the action in the Federal Court by Halpin, trustee, the power company instituted the present action, the grounds of its complaint for injunction being practically the same as those in the action

in the Federal Court by Halpin, trustee; to this action Halpin, trustee of the mortgage, was not made a party.

The action of Halpin, trustee, came on to be heard by his Honor, Judge Watkins, of the United States District Court; the defendant electric company demurred to the complaint and moved to dismiss the action upon the ground that the power company, the owner of the property, had not been made a party to the action. Thereupon his Honor, Judge Watkins, signed an order sustaining the defendant's demurrer upon the ground stated and an appeal was taken to the Circuit Court of Appeals. On May 10, 1930, the Circuit Court of Appeals handed down its opinion and judgment, affirming the order of his Honor, Judge Watkins. 41 F. (2d), 329.

In the meantime, on April 24, 1929, the present action of the power company against the electric company came on for a hearing before his Honor, Judge Townsend, in the State Court, upon a demurrer to the complaint interposed by the defendant upon the ground that Halpin, the trustee, a necessary party, had not been made a party, and upon the further ground "That the facts as alleged in the complaint fail to state a valid cause of action against this defendant, in that plaintiff has a full, complete, and adequate remedy at law for any injury that it has or may sustain on account of the matters and things alleged in the complaint."

On June 14, 1929, his Honor, Judge Townsend, signed an order sustaining the demurrer upon the ground of defect of parties, but practically overruling the second ground of demurrer above set forth. He held that the trustee was an indispensable party to the action and that he should be made a party defendant by service of summons either personally within this state or by publication, within 30 days after the date of his order; that upon compliance with this provision the defendant be enjoined and restrained, pending the hearing and determination of this action upon its merits, from in

anywise interfering with the property, lands, rights, easements, water power, or other properties of the plaintiff mentioned and referred to in the complaint, and from proceeding with the condemnation proceedings attempted to be instituted under the notice, Exhibit A, attached to the complaint; and that "in case the plaintiff shall fail to bring in said Trustee as a party to this action within the time above limited that the complaint be dismissed."

From this order both parties have appealed; the plaintiff power company assigning error in holding that Halpin, trustee, was a necessary party to the action; the defendant electric company assigning error in holding that the plaintiff, upon making Halpin, trustee, a party defendant, was entitled to a temporary injunction.

## The Appeal of the Plaintiff, Power Company

The plaintiff's appeal is based upon alleged error in the order of his Honor, Judge Townsend, in holding that the trustee was a necessary, in the sense of an indispensable, party to the action; and in ordering a dismissal of the complaint upon failure of the plaintiff to have him made a party.

The positions taken by the plaintiff are expressed with great clearness in the exceptions which are as follows:

"1. That his Honor erred in holding and ruling: 'The mortgagee has an equitable interest in the subject matter of the action, on which he holds the mortgage, and should be heard on the right of defendant to force a compulsory sale under the power of eminent domain, the proceeds of which sale would be primarily applicable toward the payment of the mortgage debt, and necessarily affect or destroy its security. * * * I conclude that the mortgagee is a necessary party to a complete determination of the controversy; and that under the Code Civil Proc. 1922, § 365, the Court must cause him to be brought in as a party, and leave is hereby given the plaintiff to amend his complaint

within thirty days after notice of the filing of this Order so as to make said mortgagee a party defendant,' in that:

"(a) There is nothing on the face of the complaint showing that there is an existing outstanding mortgagee, whose mortgage covers the lands, property and rights in controversy in this action.

"(b) The action brought by the plaintiff landowner is entirely independent of the condemnation proceedings, and the right to bring it is at the option of the party who brings it.

"(c) It is not necessary that anyone bring the action, and if it is brought, it may be brought by any one party who so desires, and may be omitted by another party to the condemnation proceeding proper.

"(d) The interests of the mortgagee and the mortgagor are not identical, but distinct and may be even hostile.

"(e) The mortgagee has a right to choose for himself whether he will join in an action with the mortgagor or bring one entirely independent and for the protection of his own interest, and in such forum as he may be advised he has a right to bring it, and as he may deem for the best interest of the rights which he protects.

"(f) The order of the Court is not authorized by Section 365 of the Code of 1922, because the Court can determine the controversy between the parties at present before it without the slightest prejudice to the rights of others, including the mortgagee.

"2. The Court erred in ruling and holding, as set forth in the quotations in 1 above, and especially 'that the mortgagee is a necessary party to a complete determination of the controversy' and must be brought in under Sec. 365 of the Code as a party defendant, because:

"(a) The mortgagee has a full and perfect right to determine whether or not he will bring an action like this, and if he chooses to bring it, has a right to choose the forum

in which to bring it if he is so situated as to have any choice of different forums or Courts.

"(b) This Court is without power to force him to come into its jurisdiction and be made a party to this action, and to deprive him of any right he has under the Constitution and laws of the United States to seek relief in the Federal Courts.

"3. That the Court erred in holding, ruling and requiring 'the plaintiff do, within thirty days after the date of this Order, amend his complaint so as to make Daniel J. Halpin, as Trustee, a party defendant, by service of summons, either personal within this State, or after order for publication of summons under Section 392 of the Code of Civil Procedure,' because:

"(a) Said Daniel J. Halpin is a non-resident of the State of South Carolina, and personal service cannot be made on him in this State.

"(b) Under the Constitution of the State of South Carolina and of the United States, service upon the mortgagee, a non-resident, by publication as directed by the Order, would be void and of no effect.

"(c) The mortgagee, being a resident of the State of New York, and beyond the jurisdiction of the Courts of the State of South Carolina, cannot be made a party as required by the Order, because he cannot be reached by the process of the Court, and the Court has no right or power to dismiss the complaint, deny to the plaintiff any relief, and refuse to permit plaintiff to contest the alleged right of condemnation unless it induces the mortgagee voluntarily to submit himself to the jurisdiction of this Court.

"4. The Court erred in ruling and holding that if the plaintiff should fail within thirty days to 'amend his (its) complaint so as to make Daniel J. Halpin as Trustee, a party defendant by service of summons,' etc., and 'shall fail to bring in said Trustee as a party to this action within the time above limited that the complaint be dismissed,' because:

"(a) The said Daniel J. Halpin, as Trustee, is not a necessary and essential party to this action.

"(b) The right of the plaintiff to oppose condemnation of its property and to contest the asserted right of condemnation is absolutely independent of any rights of the mortgagee. If the latter entered into a written agreement consenting to a condemnation of the property, if it appeared in open court as a party to this action and consented to condemnation, such acts would have no effect whatever on the rights of the plaintiff. It follows necessarily that if the mortgagee chooses not to come into the Courts of the State of South Carolina as a party to this action, such refusal cannot possibly justify the Court in dismissing the plaintiff's complaint and denying to it its right, established by decisions, to contest the alleged power of condemnation in the Courts of equity of this State.

"(c) This Court has no right to compel said Halpin, Trustee, to come into this Court and this proceeding.

"(d) The said Halpin, Trustee, having commenced an action in the District Court of the United States for the Western District of South Carolina (under the Constitution and laws of the United States) to protect his rights and equities under his mortgage, and to enjoin and restrain the condemnation proceedings threatened by plaintiff, this Court could not force said mortgagee into its forum, and the Order of Judge Townsend in this regard deprives him of the rights given him under the Constitution and laws of the United States.

"(e) The Court holds that the condemnation proceedings will 'necessarily affect or destroy its (the mortgagee's) security,' which is the plaintiff's property. Yet the Court holds that unless the mortgagee shall elect to enter the South Carolina Courts as a party to this action, it will not permit the plaintiff to protect the same property, of which it is the owner, from such destruction by condemnation.

"5. The Court, by its Order dismissing the complaint unless the plaintiff would make the trustee a party, denies to the plaintiff due process and equal protection of the law, contrary to and in violation of the provisions of the Constitution of the State and of the United States."

It must be borne in mind that in the matter of condemnation under the state's right of eminent domain, there are two separate and distinct proceedings that may be invoked: The one, by the condemnor, a special statutory proceeding, by which, when the right of condemnation is not contested by the landowner, the amount of compensation to be paid to him is judicially ascertained, in the first instance by what is commonly called a "Clerk's Jury," and by appeal to the Circuit Court; this proceeding is usually instituted by the condemnor, but it may be instituted by the owner when he has received the statutory notice and has not, within the limited time, signified his consent or refusal to an entry by the condemnor; and, the other, a proceeding in equity by the owner, who denies the right of the condemnor to condemn, to enjoin the prosecution of the statutory condemnation proceeding; a similar proceeding may be instituted by the party whose interest is adverse to that of the owner, when the owner may be seeking compensation under the statute and the adverse party is denying his right thereto.

The special statutory proceeding, whether instituted by the party seeking to acquire an easement, or by the owner, and the action in equity to determine the right of either party to condemnation or to compensation, are distinct and separate proceedings, entirely independent of each other. This is based upon the well-settled theory that there is nothing in the statutory regulations as to condemnation which gives either interested party a mode of determining the applicability of the statutory proceeding to existing conditions; the remedy for determining this is only by an application in equity for an injunction to obstruct the proposed proceeding.

In the case of *Riley v. Union Station,* 67 S. C., 93, 45 S. E., 149, 153, the Court said : "It is well settled in this State by numerous authorities that the statutes relating to condemnation proceedings thereunder do not provide the procedure for determining the right to institute such proceedings. The remedy under the statute for determining this right is therefore inadequate. When rights are to be adjudicated, and the statutes do not provide adequate remedy in the condemnation proceedings, the proper practice is for the party asserting such rights to bring an action in the Court of Common Pleas ; and the Court, in the exercise of its chancery jurisdiction, will, upon a *prima facie* showing, enjoin the condemnation proceedings until the right to institute the proceedings under the statute can be judicially determined."

To the same effect are: *Water Company v. Nunamaker,* 73 S. C., 543, 53 S. E., 996 ; *R. Co. v. Ellen,* 95 S. C., 72 78 S. E., 963, Ann. Cas., 1915-B, 1042 ; *R. Co. v. R. Co.,* 88 S. C., 478, 71 S. E., 39 ; *R. Co. v. Ridlehuber,* 38 S. C., 315, 17 S. E., 24 ; *Water Co. v. Wingard,* 150 S. C., 432, 148 S. E., 366.

Certainly, then, the owner (if not the mortgagee) has, when this property is sought to be taken by the statutory proceeding, the choice of one or the other of the two remedies :

(a) Either to consent to the taking and merely contest the amount, which then is to be fixed and ascertained first by a jury chosen and impaneled by the clerk of the Court and later on appeal, if desired, by a jury in Court of Common Pleas, all of which is a proceeding at law ; or

(b) To contest the right to condemn, which contest must be made by an independent action in a Court of equity.

It is entirely proper that notice of the proposed condemnation be given to a mortgagee of the property proposed to be condemned, though we find in the statute no requirement that this be done.

Section 4990, Vol. 3 Code, directs that the preliminary notice shall be given to "the owner" of the land; that the notice shall be in writing and shall be given at least thirty days before entry; that the notice shall be served "upon such owner" as the summons in a civil action is required to be served; that, if the owner shall not within thirty days signify his refusal or consent, it will be presumed that consent is given, and the condemnor may enter; but that the owner may move for an assessment of compensation.

Section 4991 provides that if the owner shall refuse to consent to the entry or shall remain silent, the condemnor shall begin proceedings by petition for condemnation in the manner detailed in this section; that the clerk shall give notice to the owner of the appointed day.

Section 4992 provides for the contingency of the clerk being the owner of the property.

Section 4993 provides that the amount of compensation to be made to the owner shall be determined irrespective of any benefit which the owner may derive from the improvement and with respect alone to the quantity and value of the land required and to the special damage which the owner may sustain.

Section 4996 provides for the service of the notices when the owner is an infant or *non compos mentis* and when the owner is a nonresident.

Section 4997 provides that after the condemnation and compensation the fee in the land shall remain in the owner.

Section 4999 provides if the owner shall permit an entry for construction without previous compensation, the owner shall still have the right to demand compensation.

If, as appears, the statute does not consider the interests of a mortgagee, it would seem to follow that if he needs not to be consulted in the condemnation proceeding, his interest as a mortgagee will not be affected by the action of owner in reference to it, or by the result of such proceeding.

It of course is more prudent to extend notice of the condemnation to the mortgagee, that he may take such course as he may deem proper for his protection, and possibly to bind him to the result of the condemnation, though as to this effect we make no definite pronouncement; it is possible that he may not be concluded although notified.

In Nichols Em. Dom. (2d Ed.), 353, it is said: "A lien is not a proprietary interest and estate in the land upon which it stands, but is a remedy against it, and * * * when land subject to a lien is taken by eminent domain, the holder of the lien is not entitled to be made a party, or to recover compensation from the corporation exercising the power. * * * At common law a mortgage conveys a defeasible title to the land mortgaged, and this rule still prevails in many jurisdictions. [Under such conditions the interest of the mortgagee is property, and entitled to the same constitutional protections as other property, and the mortgagee has his remedy directly against the condemning party. In many other states however, it is held that a mortgage does not pass the title to mortgaged land, or create any estate in the mortgagee before compensation is taken, but is a mere security in the nature of a lien upon the land, and in such states, in the absence of express statutory requirement the mortgagee need not be made a party, or be notified of the proceedings, and he is not entitled to compensation from the corporation taking the land." Citing many cases.

There are two considerations which appear to sustain the proposition that the mortgagee is not entitled to notice of the condemnation proceeding: (1) Ever since the Act of 1791, the mortgagee is held to be simply a lienee, the title remaining in the mortgagor; (2) regardless of what action the mortgagor may take in the condemnation proceedings, the lien of the mortgage is not affected.

It would appear to logically follow from these postulates that the mortgagee would not be entitled to institute an

action in equity to contest the right of the condemnor to proceed under the condemnation statute whether he has received notice of the proceeding or not; but it is conceivable that circumstances might exist under which his interests would be so jeopardized by the condemnation proceedings as would justify a Court of equity in entertaining his complaint and objections to it. His interests may be hostile to those of the owner; the owner may be entirely insolvent and might be disposed to appropriate the compensation allowed without regard to the mortgage; or the margin between the amount of the mortgage and the value of the entire tract may be so narrow as to render a practically forced sale inimical to the interests of the mortgagee. To sustain an action by the mortgagee some such situation should be presented; it does not arise when both owner and mortgagee are opposed to the condemnation, the action to enjoin which may proceed on the part of the owner and secure all possible benefit which by the obstruction of the statutory condemnation would enure to the benefit of the mortgagee.

In the present case both owner and mortgagee received notice of the condemnation proceedings and both filed objections to the entry of the condemnor. They are manifestly in accord in opposition to the condemnation; the mortgagee having instituted an action in the Federal Court to enjoin the proceedings and the owner, the present action for the same purpose. There is not a circumstance alleged showing any ground for such an action by the mortgagee; certainly not a joint action which would be the result of the order of Judge Townsend requiring the mortgagee to be made a party to the present action, and nothing to show but that the interests of the mortgagee in opposition to the condemnation proceedings will be amply protected by the action in the name of the power company. The basis of the defendant's right to have the mortgagee made a party is the right of the mortgagee to bring a separate suit in his own name, which does not exist under the circumstances appearing.

But assuming for the argument's sake that the mortgagee had such an interest in the matter as would have permitted him to bring such an action as the power company has brought, to which the power company as has been held by the Circuit Court of Appeals in the Halpin, trustee, case, he would have been in exactly the same position and with the same rights as the power company to exercise the option above stated, either to submit to the condemnation or to institute an action for injunction. This is a matter for his choice, and with its exercise the condemnor has absolutely no concern. The fact that he has entered his objection to the condemnation does not conclude him from later consenting to it; neither he nor the owner can compel the other to either choice of options.

In 2 Jones. Mortg. (6th Ed.) § 681-a, it is said: "As to third persons the interests of mortgagor and mortgagee are not joint, but the mortgagor is the owner. They cannot join or be joined in an application to assess damages for land taken for public uses."

In *R. Co. v. Baker,* 102 Mo., 553, 15 S. W., 64, 65, the Court said: "The landowner is entitled to full damages, and the question as to the distribution of the money between the mortgagees is a question which does not concern the plaintiff (condemnor)."

It has been held that: "A mortgagee of real estate is a necessary party defendant in an action wherein the relief sought by the plaintiff is hostile to the interest of such mortgagee. He is an essential party to any proceeding affecting his rights to the mortgaged premises." 2 Jones Mortg. (6th Ed.), § 709; *United Sheet & Tin Plate Co. v. Hess* (C. C. A.), 159 F., 889.

The present action, however, is not hostile to the interest of the mortgagee; it is in aid of the position which he has assumed, and if it should result favorably to the power company, the interests of the mortgagee will be fully protected; if it should result unfavorably to the power company,

and the condemnation proceeding should eventuate in the assessment of compensation to the power company, there is no reason why the mortgagee should not be allowed to intervene and have the compensation paid to him and credited upon the mortgage. We think that the Massachusetts rule, as defined in 1 Jones Mortg. (6th Ed.), p. 686, is the proper one: "The damages are assessed to the owner of the equity of redemption, without regard to mortgages incumbering the land. The proceeding is in the nature of a proceeding in *rem* against the land. A mortgagee not in possession has no claim for compensation for an injury to the land when lawfully used by any party. As to third persons the interests of mortgagor and mortgagee are not joint, but the mortgagor is the owner. They cannot join or be joined in an application to assess damages for land taken for public uses. The mortgagor alone can make a surrender. In equity the damages assessed to the owner of the the land is deemed the land, and the mortgagee may follow the money in the mortgagor's hands, or prevent its going into his hands. The burden of proof is then upon him to show to what extent he has a claim upon the funds; and that question is then litigated between the parties in interest, and not at the cost of the taker of the land."

The order of Judge Townsend concedes that the complaint discloses a threatened trespass upon the property of the plaintiff, and that it therefore presents a proper case for an interlocutory injunction; notwithstanding this, the order decrees a dismissal of the complaint, thus permitting the defendant to proceed with its unlawful acts, unless the plaintiff shall bring into the case, as a party defendant, the mortgagee of the property. In this we think that there was error.

The plaintiff, a South Carolina corporation, the owner of lands, water rights, and franchises in McCormick County, brings this action in the only Court in which it can present its entire case, the Court of Common Pleas of McCormick of the State of South Carolina; it could not bring it in

the Federal Court, there being no diversity of citizenship, and if it had it would be limited to Federal questions. The plaintiff alleges a threatened trespass and invasion of the freehold interests of the plaintiff by defendant, an entire stranger to the title, under color of the right of condemnation, and asks for protection by injunction. By the order appealed from the Court proposes to dismiss the complaint and to deny to the plaintiff any relief from the acts of the defendant unless the plaintiff shall bring into this Court as a party to the action the mortgagee who is a resident of the state of New York and who is therefore beyond the jurisdiction of the only Court in which plaintiff can seek full relief. Upon the plea that there is a lien upon the premises, the defendant is to be permitted to accomplish what it admits by the demurrer to be an unlawful seizure of the plaintiff's property—to go on with its admitted wrongdoing. The plea that there is a mortgage on the premises is an irrelevant answer to the complaint. The complaint states a good cause of action and the Circuit Judge so held. It alleges that the plaintiff is the owner of certain lands, water rights, and franchises, and that it wrongfully and illegally is asserting and attempting to exercise the power of condemnation. The plaintiff's cause of action arises out of its ownership of the realty and the threatened acts of the defendant with reference thereto.

The cases of *Niles v. Union*, 254 U. S., 80, 41 S S. Ct., 39, 65 L. Ed. 145, and *Trust Company v. Smith*, 266 U S., 152, 45 S. Ct., 26, 69 L. Ed., 219, are illustrative. In each of them the plaintiff's cause of action was based upon a contract, and the Court held that all of the parties to the contract must be made parties to the action. It is inconceivable that the owner of realty, by placing a mortgage upon it, loses his right to institute an action necessary for the protection and preservation of his property from the wrongful acts of strangers.

The owner of realty, even though it be subject to a mortgage, may maintain an action in his own name for injunction or damage for trespass to his property and property rights.

The case of *Driskill v. Rebbe*, 22 S. D., 242, 117 N. W., 135, 136, was an action to restrain the defendants from diverting the waters of a creek in such manner as to interfere with the plaintiff's use thereof. The Court held that "plaintiffs were not deprived of the right to sue to protect their alleged water rights appurtenant to certain land by having given a deed of trust thereon, which was in fact a mortgage."

In *Zimmerman v. Finkelstein*, 230 Mass., 17, 119 N. E., 194, 195, the Court held that the owner of the fee of a passageway might maintain a suit for a mandatory injunction requiring the removal of encroachments therefrom without joining as parties other persons who have rights in the passageway. The Court said: "If, as the plaintiffs allege and the master has found, the fire-escapes are maintained upon their land unlawfully and they are entitled to their removal, there was no occasion for making others having easements in the way parties to the suit, as it is apparent that complete justice may be done between all parties interested, in one suit."

*Atwood v. Moose Head Paper & Pulp Co.*, 85 Me., 379, 27 A., 259. Mortgagor may claim damages to his freehold under the Mill Act (in nature of condemnation).

*Watkins v. Kaolin Mfg. Co.*, 131 N. C., 536, 42 S. E., 983, 60 L. R. A., 617. Action for damages to realty caused by blasting brought by fee owner. Defendant claimed that plaintiff could not sue because of mortgage to trustee which was outstanding. The Court said: "As to the first question: It is clear that the plaintiff had the right to bring this action for damages done to the freehold. She owned the premises in fee, subject to a deed of trust executed thereon to secure a debt. The conveyance of the title to the trustee did not disturb her possession or ownership as to trespassers and

tort-feasors. So long as the property was of sufficient value to secure the payment of the debt, the trustee and *cestui que* trust could sustain no loss or injury by reason of damage done to the premises. Therefore the loss by reason of the damage would fall upon the trustor, the equitable owner, and she, being the party really injured, had a right to maintain the action."

*Schuylkill Nav. Co. v. Thoburn,* 7 Serg. & R. (Pa.), 411. Plaintiff sued to recover damages to his cotton mill caused by backwater from defendant's dam. It was held that the mortgagee was not a necessary party and that his right was, by motion, to take the money out of Court.

*Emory v. Keighan,* 88 Ill., 482. Mortgagor may maintain ejectment. The Court said: "As to strangers, the mortgagor is still, by our laws, regarded as the owner of the property."

*Hamilton v. Griffin,* 123 Ala., 600, 26 So., 243. Mortgagor may recover penalty for cutting trees upon the land.

*Van Dyke v. Grand Trunk R. Co.,* 84 Vt., 212, 78 A., 958, 967, Ann. Cas., 1913-A, 640. The mortgagor is the owner as to all the world except the mortgagee. In that case the mortgagor was held entitled to recover full damages for fire caused by locomotive. In connection with an extensive review of the authorities the Court said: "As to third persons, the mortgagor in possession is treated as owner and the mortgagee as a security holder and so the mortgagor may exercise the rights of an owner in the preservation of the property, although he may do nothing to the detriment of the security."

A complaint which states a good cause of action may not be dismissed without a trial. The plaintiff landowner is entitled to a hearing upon the merits before the only Court in which it can be fully heard as to the alleged unlawful and threatened acts of the defendant with reference to its premises and is entitled to relief if it establishes its case by sufficient evidence.

In addition, the fact that the complaint which has been demurred to does not show that there is a mortgage upon

the premises and that the mortgagee is a nonresident is not the only objection to the decree; the error lies in the fact that the decree proposes to dismiss a sufficient complaint of a landowner against a wrongdoer merely upon the ground that there is a mortgage lien upon the premises and that the mortgagee has not been made a party to the action.

We do not think that Section 365 of the Code of Civil Procedure, under the circumstances presented in this case, requires that the mortgagee be brought in as a party·defendant. It does not authorize the Court to dismiss the complaint but expressly provides that it shall proceed. to determine the controversy between the parties before it.

It provides: "The Court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the Court must cause them to be brought in."

The language and clear intendment of the section is that in such a case as that at bar the Court may proceed without the presence of the mortgagee and for the following reasons:

(a) The mortgagee is a nonresident of the state;

(b) Where the mortgagee need not bring or enter into the action unless he so chooses;

(c) Where the action is by a landowner to restrain unlawful interference with his estate by a stranger to the title;

(d) Where the mortgagee has rights distinct from that of the mortgagor and has a choice of tribunals;

(e) Where the action is not upon or under the mortgage and does not involve its validity, construction, or enforcement.

It cannot be said that a complete determination of the case could not have been had without the presence of the mortgagee. The action is not one to condemn, but to prevent condemnation; it is not an action in which any rights of the mortgagee could be taken away; the mortgagor is not com-

plaining of the absence of the mortgagee, and the condemnor certainly could not complain if the mortgagee did not choose to bring a suit against it; he could not complain if the mortgagee chose to seek another tribunal and litigate his rights there.

Assuming that Section 365 is applicable, the proper procedure would have been an order directing the issuance of an amended summons including the mortgagee and requiring the defendant, the party interested apparently in having the mortgagee made a party, to endeavor to effect service upon him. *Searles v. Ins. Co.*, 148 Iowa, 65, 126 N. W., 801, 29 L. R. A. (N. S.), 405; *Pollard v. Lathrop,* 12 Colo., 171, 20 P., 251; *Husting v. Coca-Cola Co.*, 194 Wis., 311, 216 N. W., 833; *Decatur v. Bright,* 57 Iowa, 724, 11 N. W., 653.

The Court can determine the controversy between the parties before it without prejudice to the rights of others, and a complete determination of the controversy can be had without the presence of the mortgagee. The plaintiff seeks only injunctive relief against the defendant. This is not a condemnation proceeding. There will be no proceeds of sale and the decree will not affect or destroy the security of the mortgagee. It will either enjoin the defendant from proceeding in condemnation or will dismiss the complaint. In either event, the security and right of the mortgagee will remain the same after as before. The mortgagee will not be bound by the decree for he is not a party. The plaintiff seeks no relief from him; his rights are required to be determined before the rights of the parties before the Court may be passed upon. If the complaint be true, as must be assumed on this record, the defendant is a trespasser seeking unlawfully to interfere with the plaintiff's property rights. The defendant claims nothing under the mortgage, nor does it plead justification under it. It may be an advantage to the defendant to bring the mortgagee into this action so that he may be bound by the judgment; but that does not in any way sustain the proposition that the Court cannot determine

the controversy between the parties before it without prejudice to the rights of the mortgagee. Regardless of whether the mortgagee should be brought into this action upon the request of the defendant, it is perfectly clear that the Court can determine the controversy presented by the pleadings without prejudice to the rights of any one.

In the opinion of the Circuit Court of Appeals in the *Halpin case,* 41 F. (2d) 329, 331, it is said: "It is sought to distinguish the above cases on the ground that the mortgagee in South Carolina acquires no title to the property but merely a lien thereon. We think, however, that this might render it unnecessary to join the mortgagee as a party to condemnation proceedings (see 20 C. J., 922 and cases there cited), but certainly could not be a reason for not joining the owner of the land."

We conclude therefore that so much of the order of his Honor, Judge Townsend, as held that the mortgagee was a necessary party to the injunction proceeding, is erroneous.

## The Appeal of the Electric Company

The appeal of the electric company involves the correctness of the order of his Honor, Judge Townsend, in granting the interlocutory order of injunction, the injunction, *pendente lite,* stopping the statutory proceeding of condemnation.

The rule is well recognized in this state that an interlocutory injunction will not be granted except under the circumstances stated in the case of *Childs v. Columbia,* 87 S. C., 566, 70 S. E., 296, 297, 34 L. R. A. (N. S.), 542: "The right to an injunction does not arise merely because the plaintiff asks for injunction and nothing more, nor because the plaintiff alleges that without the injunction he would suffer irreparable injury. This results from the truism that all judicial action is taken on the conviction of the Judge as to the rights of the parties, and not on the opinion of the

parties themselves as to their rights. Hence there are two essential conditions to the granting of even temporary injunctions: First, the complaint must allege facts which appear to be sufficient to constitute a cause of action for injunction; and, second, on the entire showing from both sides it must appear, in view of all the circumstances, that the injunction is reasonably necessary to protect the legal rights of the plaintiff pending the litigation. *Alderman v. Wilson,* 69 S. C., 159, 48 S. E., 85; *Northrop v. Simpson,* 69 S. C., 554, 48 S. E., 613; *Marion C. L. Co. v. Tilghman L. C.,* 75 S. C., 221, 55 S. E., 337; *Boyd v. Trexler,* 84 S. C., 51, 65 S. E., 936; *Kelly v. Tiner,* 86 S. C., 160, 68 S. E., 465."

See, also, *Gasaway v. Coal Corp.* (C. C. A.), 278 F. 56; *R. Co. v. Tel. Co.* (C. C. A.), 252 F. 29; *American Mercury v. Kiely* (C. C. A.), 19 F. (2d) 295; *Barker v. Brotherhood* (C. C. A.), 15 F. (2d) 16.

"Courts do not enjoin the construction or use of public utilities and improvements at the suit of private individuals unless the damage is both serious in amount and irreparable in character." 14 R. C. L., 346.

There is no question as to the correctness of the established rule that "Where the action is for the sole purpose of an injunction, and a temporary injunction is essential to the assertion and preservation of a legal right, if established as alleged in the complaint, it is error of law to refuse or set aside a temporary injunction." *McClary v. Lumber Corp.,* 90 S. C., 165, 72 S. E., 145, 148; *Crawford v. A. C. Lbr. Corp.,* 77 S. C., 81, 57 S. E., 670; *Alderman v. Wilson,* 69 S. C., 159, 48 S. E., 85; *Jones v. Lbr. Corp.,* 92 S. C., 421, 75 S. E., 698; *Ry. v. R. R.,* 88 S. C., 478, 479, 71 S. E., 39; *Sizemore v. Jennings,* 88 S. C., 248, 70 S. E., 726; *Riley v. Union Station,* 67 S. C., 92, 93, 45 S. E., 149; *Ry. v. Ellen,* 95 S. C., 71, 78 S. E., 963, Ann. Cas. 1915B, 1042; *Water Co. v. Nunamaker,* 73 S. C., 554, 53 S. E., 996.

This rule is, of course, subject to that already stated, that complaint must show a case which primarily establishes a right to an injunction.

The objections of the plaintiff to the condemnation proceeding must therefore be considered in determining whether its action comes within the rule thus declared.

Before going into detailed statement of these objections, the setting of the controversy is of interest:

The plaintiff, Twin City Power Company, is a corporation under the laws of South Carolina, or rather claims to be, organized under a charter issued by the Secretary of State, by virtue of the general laws of this state, on August 7, 1900, 30 years ago. By an Act approved February 20, 1901, 23 St. at Large, p. 862, its charter was purported to be amended, giving it the right to construct a dam across the Savannah river at Price's Island and Dorton Creek opposite McCormick county, and conferring upon it the right of condemnation under the state's right of eminent domain.

A corporation under the same name was formed under the laws of Georgia in 1901 by a charter which authorized it to acquire by purchase or condemnation, lands, riparian and water rights on the Georgia side of the Savannah river, and to construct dams across the river at Price's Island and Dorton Creek and to sell electricity to the public generally.

After the issuing of said charters, the Twin City Power Company of South Carolina and the Georgia corporation of the same name, the stock of which is owned by the South Carolina corporation, acting in accord, acquired land, riparian and water rights on each side of the Savannah river for a distance of twelve miles, for the purpose of owning and developing a unified site to generate, transmit, and sell hydro-electric power. The total acreage so acquired being 7,634.05 acres in both states; together with the construction of a railroad spur track from C. &. W. C. Ry. out to the proposed dam site on the South Carolina side, and the purchase of land constituting a complete right of way from

the dam site to North Augusta, 19 miles in length, for a transmission line to the proposed distribution station of the plaintiff, which was to be located in North Augusta, where the plaintiff also acquired and held for this purpose several acres of land. No other steps have been taken by either company to enjoy the use of its alleged franchises.

The defendant Savannah River Electric Company is a public service corporation chartered under the laws of this State by an Act approved February 4, 1927, 35 St. at Large, p. 887, under which it is given the right to build a dam at any point across Savannah river in McCormick county, and to condemn such property, water riparian and other rights, or easements, as may be necessary to its construction and operation. In addition to this, it has been duly licensed by the Federal Power Commission pursuant to the Act of Congress approved June 10, 1920, commonly known as the Federal Water Power Act, § 23 (16 U. S. C. A., § 817) to construct a dam on the Savannah River opposite the Town of Clark's Hill in McCormick County, and under the terms of this Act and the defendant's license, the power of eminent domain is expressly conferred upon it. The defendant, as a South Carolina corporation, has also been domesticated under the laws of Georgia.

The defendant insists that the plaintiff's legislative charter of 1901, 23 St. at Large, p. 862, is in conflict with article 9, § 2 of the Constitution of this state. That section is: "No charter of incorporation shall be granted, changed or amended by special law, except in the case of such charitable, educational, penal or reformatory corporations as may be under the control of the State, or may be provided for in this Constitution, but the General Assembly shall provide by general laws for changing or amending existing charters, and for the organization of all corporations hereafter to be created, and any such law so passed, as well as charters now existing or hereafter created, shall be subject to future repeal or alteration: Provided, That the General Assembly may

by a two-thirds vote of each house on a concurrent resolution allow a Bill for a special charter to be introduced, and when so introduced may pass the same as other Bills."

The act of 1901 fails to show that such a resolution was introduced or passed, as required by the Constitution; the Journals are equally silent upon the matter. Had the General Assembly originally chartered Twin City Power Company by a special act, an amendment to its charter could possibly have been passed without complying with these constitutional provisions, but to permit a corporation to organize under the general law and procure a charter from the Secretary of State and then have its charter amended by a special act of the General Assembly conferring broad and unusual powers upon it without a concurrent resolution by a two-thirds vote of each House, would be a clear infringement of this provision of the Constitution.

It seems clear therefore that the Twin City Power Company has no charter under said act. Its charter from the Secretary of State has been forfeited under the express provisions of Section 4325, Vol. 3, Code: "Any corporation organized under the provisions of this Article shall cease to exist by a nonuser of its franchises for five years at any one time: Provided, That this shall not relieve any stockholder of any liability incurred during the existence of said corporation."

The record also shows that the passage of six separate acts of Congress were procured permitting the construction of a dam across the Savannah by Twin City Power Company, each of which was allowed to expire by its own limitation. After the passage of the Federal Water Power Act in 1920, it applied for and then refused to accept a preliminary permit from the Federal Power Commission, the agency established by Congress to deal with matters of this kind.

Assuming, however, the existence and validity of the South Carolina charter of the plaintiff corporation, we will proceed to consider the objections interposed by the plain-

tiff to the condemnation proceeding instituted by the defendant, the basis of its action for an injunction.

## OBJECTION No. 1

The plaintiff contends that the defendant is not a public service corporation for the reason that its charter does not expressly provide that it must sell its power to the public generally, and confers upon it the power to lease, merger, etc.

We are unable to see how the character of defendant as a public utility can be seriously questioned. That the development and sale of hydro-electric power as a public use has been so repeatedly settled by the Courts that it is no longer open to question. *Ingleside Mfg. Co. v. Light & Power Co.,* 76 S. C., 95, 56 S. E., 664; *Southern Power Co. v. Walker,* 89 S. C., 84, 71 S. E., 356; *McMeekin v. Central Power Co.,* 80 S. C., 512, 61 S. E., 1020, 128 Am. St. Rep., 885; *Mt. Vernon, etc., Co. v. Alabama, etc., Co.,* 240 U. S., 30, 36 S. Ct., 234, 60 L. Ed., 507.

"The power of eminent domain may be exercised for the purpose of erecting and maintaining plants for generating electricity and distributing the same to the public for light, heat and power." 20 Corpus Juris, 584, 585. (And see note 83, supporting this, citing cases from 25 jurisdictions, including South Carolina.)

"The manufacture, supply, and sale to the public of power produced by water as a motive force is a public use for which land, water, and water rights may, consistently with U. S. Constitution, 14th Amend., be condemned." *Mt. Vernon-Woodberry, etc., Co., v. Power Co.,* 240 U. S., 30, 36 S. Ct., 234, 235, 60 L. Ed., 507.

There can hardly be any doubt now of the public nature of power companies in South Carolina, since under Section 5024, Vol. 3, Code of 1922, they are given generally all the powers of telephone and telegraph companies including the right of condemnation.

Again any shadow of doubt as to the public nature of such companies has been removed by the Act of 1922 devolving upon the railroad commission the duties usually performed by public service commissions, where a public utility was defined as follows: "The term 'Public Utility,' when used in this Act includes every corporation and person furnishing or supplying in any manner gas, electricity, heat, electric power, water and street railway service, or any of them, to the public, or any portion thereof, for compensation. The term 'public or any portion thereof' as used herein, means the public generally, or any limited portion of the public, including a person, private corporation, municipality, or any political subdivision of the state to which the service is performed, or to which the commodity is delivered, and whenever such corporation or person performs a service or delivers a commodity to the public, or any portion thereof, for which compensation is required, such corporation or person is hereby declared to be a public utility subject to the jurisdiction and regulation of the railroad commission, and the provisions of this Act, to the extent of its activities within the state." Section 1, Acts of 1922, at page 938.

So far as we have been able to find, there is no constitutional limitation upon the power of the General Assembly to declare what business is or is not public in its nature. In fact, our Supreme Court, in *Riley v. Union Station Company*, 71 S. C., at page 485, 51 S. E., 485, 495, 110 Am. St. Rep., 579, says: "The first general principle which must control this question is, when the Legislature, in effect, declares that the construction, maintenance, and operation of the union passenger station in the City of Charleston is a public purpose, so as to authorize the condemnation of property, this conculsion is binding on the Court, if there be any reasonable ground to support it."

In our case, however, it is not necessary to infer a legislative stamp of public purpose from the mere delegation of the power of eminent domain, for the act of the Legislature

chartering the corporation declares in express language: "That this Act is hereby declared to be for a public purpose." (Act Feb. 4, 1927, § 11.)

Nor can the fact that the defendant may intend to sell all or some of its power to other public utility corporations affect the nature of the purpose or use. Under the provisions of the Public Utility Statute above quoted, a "public utility" is defined as a person or corporation "supplying * * * electric power * * * to the public, or any portion thereof," and the term "public, or any portion thereof" is defined to mean "the public generally, or any limited portion of the public, including a person, private corporation, municipality, or any political subdivision of the state."

Our Court has consistently and repeatedly held that it is not necessary, in order to be a public use or purpose, that the entire community, or any considerable portion of it, enjoy the benefits of the improvement. *Boyd v. Granite Company,* 66 S. C., 433, 45 S. E., 10, 12; *Riley v. Union Station Co.,* 71 S. C., 457, 51 S. E., 485, 496, 110 Am. St. Rep., 579; *McMeekin v. Power Co.,* 80 S. C., 512, 61 S. E., 1020, 128 Am. St. Rep., 885.

In both the *Boyd* and the *McMeekin cases,* the Court quotes with approval from the opinion in *Talbot v. Hudson,* 16 Gray (Mass.), 417, as follows: "It has never been deemed essential that the entire community, or any considerable portion of it, should directly enjoy or participate in an improvement or enterprise in order to constitute a public use, within the true meaning of these words as used in the Constitution. Such an interpretation would greatly narrow and cripple the authority of the Legislature, so as to deprive it of the power of exerting a material and beneficial influence on the welfare and prosperity of the state. In a broad and comprehensive view, such as has been heretofore taken of the construction of this clause of the declaration of rights, everything which tends to enlarge the resources, increase the industrial energies, and promote the productive power of

any considerable number of the inhabitants of a section of the state, or which leads to the growth of towns and creation of new sources for the employment of private capital and labor, indirectly contributes to the general welfare and to the prosperity of the whole community. It is on this principle that many of the statutes of this commonwealth by which private property has heretofore been taken and appropriated to a supposed public use, are founded. Such legislation has the sanction of precedents, coeval with the origin and adoption of the Constitution, and the principle has been so often recognized and approved as legitimate and constitutional that it has become incorporated into our jurisprudence."

The United States Supreme Court has comparatively recently passed on some phases of this question and held: "It is not essential that the entire community or even any considerable portion should directly enjoy or participate in any improvement in order to constitute a public use within the law of eminent domain."

In fact, the defendant upon its acceptance of a charter from the state, for the purposes stated, taken in connection with the statutory provisions referred to would be estopped from denying that it was a public utility.

The plaintiff contends that the defendant is not a public service corporation in South Carolina, for the reason that its power house will be located on the Georgia side of the river, and that therefore the power produced will be generated in Georgia and not in South Carolina. We fail to see where the mere location of the power house can have any possible bearing on defendant's right to condemn. No such limitation or restriction is found in the Act under which it is chartered. Section 4 of the Act confers upon defendant the power to condemn any interest "necessary to the construction, erection, operation and maintenance of its power plants, dams, reservoirs, and lines and for generating, accumulating, storing and transmitting electricity and power,

and for any other purpose whatsoever incidental to or connected with the construction, erection and operation of its plants, dams, reservoirs and transmission lines."

The Legislature knew that the Savannah River was the boundary line between the States of South Carolina and Georgia, and knew that the power house would necessarily be located in one State or the other. Had it intended to impose upon the defendant's right to condemn the limitation that the power plant should be located in this State, it could very easily have done so. The broad purpose in mind, obviously, was to foster and promote the development of hydro-electric power, and the facility with which such power is transmitted, renders the location of the power plant a purely incidental detail of the undertaking. *Pittsburg, etc., Co. v. Liston,* 70 W. Va., 83, 73 S. E., 86, 89, 40 L. R. A. (N. S.), 602.

It is faintly suggested that because the people of the State of Georgia will also be benefited by the proposed development, the use ceases to be a public one as far as South Carolina is concerned. It is well settled, however, that "if the particular improvement or use will be of sufficient benefit to the people of the State to authorize an exercise of the power, it will not be prevented by the fact that the people of another State will also be benefited." 20 Corpus Juris, 553; *Grover, etc., Co. v. Lovella, etc., Co.,* 21 Wyo., 204, 131 P., 43, L. R. A., 1916-C, 1286, Ann. Cas., 1915-D, 1207.

In the case of *Gilmer v. Lime Point,* 18 Cal., 229, it was said that it was not essential that the use or benefit should be exclusively for the people of the State, or exclusively even for a portion of the people; "that the people of California have no right to complain that the people of Oregon are also benefited by a public improvement."

"Where the use for which the condemnation is sought is a public use in this State, and will serve the citizens of this State—their demands, necessities and industries—the fact that it may incidentally also benefit the citizens and indus-

tries of a neighboring State will not defeat the right of condemnation." *Washington Water Power Co. v. Waters,* 19 Idaho, 595, 115 P., 682, 686.

To the same effect is *Columbus Waterworks Co. v. Long,* 121 Ala., 245, 25 So., 702.

A case very closely in point is that of *In re: Townsend,* 39 N. Y., 171, in which the statute authorizing the condemnation of lands in New York for the benefit of a canal located wholly within New Jersey was upheld. This case is fully referred to in *Grover, etc., v. Lovella, etc., supra.* The Court in the course of its opinion said: "It does not follow, because the canal is outside the State limits, that its construction and maintenance are not for a public use, within the meaning of our Constitution. If it were within our limits, what are the public benefits to result from its construction? Not merely that our citizens may use it for transportation or travel. Providing transportation to market and facilitating intercommunication are some of the public purposes of such improvements; but communication between our chief cities and the productive regions which lie outside our State, and intercourse with those who dwell there, are truly objects of public interest and advantage as between two sections of the State itself."

And see note to *Carnegie Natural Gas Co. v. Swiger* (W. Va.), 46 L. R. A. (N. S.), 1073, where the annotator says: "It will be seen by the cases, *infra,* that the relative amount of direct benefits accruing inside and outside, respectively, of the State, is not material. Where part of the benefit will accrue directly to people of the State in which the property to be taken is located, the fact that part accrues to people of another State will not defeat the right to exercise the power of eminent domain."

"That electric company seeking to condemn lands for power purposes, * * * furnishes power to customers outside of State, does not make use to be made of property

sought to be condemned a private one." *In re: Niagara, etc., Power Co.,* 125 Misc. Rep., 269, 210 N. Y. S., 748.

An appropriation for the construction of a right-of-way will be sustained, though the purpose of such line is to transmit electricity to a portion of territory beyond the township in which the land is located and for sale to an electric company operating in said territory and adjacent thereto. *Kulp v. Commission,* 82 Pa. Super. Ct., 83.

The right of eminent domain will not be denied a public utility corporation constructing its electric power lines from a point within the State to a point in another State, where it is alleged and shown that such lines will be used to convey power for public and private use. *Brooke Electric Co. v. Beall,* 96 W. Va., 637, 123 S. E., 587.

"If having the power of eminent domain based on a right of public use in Georgia of electric power produced at its plant, the Toccoa Electric Company would not lose such power because it also furnished electric power in Tennessee." *Rogers v. Toccoa Elec. Power Co.,* 163 Ga., 919, 137 S. E., 272, 274.

Again it is suggested that the defendant is a member of a trust, and while ostensibly possessing the right of condemnation, such right will be exercised for the benefit of other companies. Even if there were any factual basis for such a contention, it would be without merit as being premature. Under the statute laws of South Carolina, notably, among others, the Public Utility Act of 1922, any violation of its charter or legal duty could and would be visited with swift punishment, even to the revocation of its charter. In fact, defendant having accepted its charter and the right of eminent domain, and having held itself out as, and admitted itself to be, a public utility, would be compelled under the common law to function as a public utility and observe its charter duties, or surrender or have revoked its charter. *Snell v. Clinton Elec. L. Co.,* 196 Ill., 626, 63 N. E., 1082, 58 L. R. A., 284, 89 Am. St. Rep., 341; Wyman Public Service Corporations,

Vol. 1, page 96; *Pittsburg Hydro-Elec. Co. v. Liston,* 70 W. Va., 83, 73 S. E., 86, 89, 40 L. R. A., (N. S.), 602.

In the *Liston case* the Court, in speaking of the wisdom of the Legislature in conferring this power on hydro-electric companies, and answering a contention similar to the one made here, said: "A heretofore wasted natural power can thus be made to supply a public need, and the State still retain the right to prescribe reasonable regulations for a protection of the public. For no public service corporation or company can escape this inherent sovereign power which is always reserved to the State. 1 Lewis on Em. Dom., § 246; *Munn v. Illinois,* 94 U. S., 113, 24 L. Ed., 77; *Charleston Natural Gas Co. v. Lowe,* 52 W. Va., 662, 44 S. E., 410. That there is now no statute regulating the charges which such companies may make for services to be rendered is immaterial. It is time to prescribe regulations when the company is ready to perform the services.    *    *    *    It should not be presumed that it wants the land for a private use when it alleges that its purpose is to serve the public. It will be time enough for the State to interpose for the protection of the rights of the public when the company begins to pervert the use, if it should ever do so, to the neglect of the public which it proposes to serve."

However, it is not necessary to stray from the decisions of our Court to determine that any such question is premature. In *McMeekin v. Central Power Co.,* 80 S. C., 512, 61 S. E., 1020, 1024, 128 Am. St. Rep., 885, it was contended that, under the guise of public purpose, the use of the power company in reality was private, in that it intended to supply power to a few manufacturing concerns and not to the public generally. In answer to this our Court said: "The language of Section 5 of the Act plainly imposes upon the defendant a public duty; and the petitioner assumes that the defendant will not comply with the requirements of the statute. It would be prejudging the case to decide the question at this time."

In like manner we may say that the statute and legislative charter plainly impose upon defendant a public duty and it would be prejudging the case to assume its intention to violate that duty.

Aside from this, where a public utility corporation has been duly chartered, the Courts will not inquire into their motives.

"The usual practice, however, is for the Courts to refuse to look into the ulterior motives of corporations duly authorized by the Legislature to take lands for a public use, or to regard the relations of stockholders with other corporations which will be indirectly benefited by the taking." 10 Ruling Case Law, 212.

Again it is unnecessary to go outside of our own decisions to find support for this proposition. In the *Riley case, supra,* it was shown that most of the stock in the condemning corporation was owned by the Southern Railway Company and the Atlantic Coast Line Railroad Company, and a contention very similar to the one here is made. In disposing of it the Court said: "The fact that the Southern Railway Company and the Atlantic Coast Line Railroad Company are the principal stockholders in the defendant company, and the officers of the defendant company are officers in said railroad companies, cannot affect this question, for the use is still a public use, whether considered with reference to the defendant company or with reference to the stockholding companies, as these railroad companies, as common carries, are public agencies, and it is within the purpose of their organization to own or control depot facilities required for their business and the needs of the community."

However, all of the contentions of plaintiff in this respect seem quite beside the point in the face of defendant's sworn return, which has not and cannot be seriously controverted. From that return it appears that Savannah River Electric Company is "a *bona fide* corporation and proposes to construct the said dam for a public purpose and in its own

proper right to generate, distribute and sell * * * hydro-electric power," etc. That it has already acquired 75 per cent. of the land necessary for its purpose, amounting to approximately 35,000 acres not including acreage in the river bed. That it already has outstanding contracts with cotton mills to furnish 6,000 horse power, and pending contracts for an additional 6,000 horse power.

Again it is suggested that the defendant cannot be considered a public service corporation for the reason that it is a member of the so-called power trust, that it is a party to an illegal combination, and that it intends to operate in restraint of trade. Aside from the authorities which clearly show that Courts will not assume that a public service corporation intends to violate the law and where a public service corporation has been duly chartered the Courts will not inquire into its motives, the question here suggested cannot be raised collaterally. In the case of *Webb v. Knox County Transmission Company,* 143 Tenn., 423, 225 S. W., 1046, 1047, questions were raised very similar to the question raised by plaintiff in this case. Attention is particularly called to the well-considered and reasoned opinion of the Tennessee Court in this case. The Court states the ground upon which the defendant in that case resisted the right of petitioner to condemn as follows:

"(1) It is said that it appears from the pleadings and proof that petitioner does not propose or intend to devote the lands or rights-of-way sought to be condemned to a public use.

"(2) That it is not the purpose of petitioner to furnish electricity to the public generally.

"(3) That it has not the right of eminent domain, because it proposes to lease, or has leased, its line and facilities to another public corporation.

"(4) That petitioner is not a *bona fide* corporation, because the proof shows that it was organized as a mere dum-

my, * * * for the purpose of carrying out and aiding an alleged monopoly. * * * "

In disposing of the grounds above stated upon which it was claimed that the right of condemnation did not exist, the Supreme Court of Tennessee decided each of these contentions in favor of the condemning company and against the contention of the landowner.

Not only is such a question premature and therefore not to be considered · (*McMeekin v. Power Company*, 80 S. C., 512, 61 S. E., 1020, 128 Am. St. Rep., 885; *Pittsburg, etc., v. Liston*, 70 W. Va., 83, 73 S. E,. 86, 40 L. R. A. (N. S.), 602; 10 R. C. L., 212), but the following cases hold that such a question cannot be raised collaterally:

*National Fireproofing Co. v. Mason, etc., Ass'n* (C. C. A.), 169 F., 259, 26 L. R. A. (N. S.), 148.

"The question whether a certain railroad was controlled by another railroad, so as to render the enterprise of constructing the former road illegal because of the two roads being parallel and competing, cannot be collaterally raised in condemnation proceedings by the road being constructed." *Memphis, etc., R. C. v. Union R. R. Co.*, 116 Tenn., 500, 95 S. W., 1019.

"The improper lease by a railroad * * * of its property is no defense to a petition for condemnation of land for additional trackage, * * * where the petition contains the allegations required by the statute, and the railroad * * * has not been dissolved nor ousted from its franchise [by the State]." *Banaghan v. Worcester County*, 213 Mass., 17, 99 N. E., 476.

"A landowner is not entitled to equitable aid against the exercise by a railroad company of the right of eminent domain in taking his land, even though such company was created and organized by virtue of a contract unlawful under the Pennsylvania * * * law, because a competing and rival railroad was thereby merged, as only the commonwealth has the right to raise that question." *Tibby Bros.*

*Glass Co. v. Pennsylvania R. Co.,* 219 Pa., 430, 68 A., 975, cited in note to 26 L. R. A. (N. S.), at page 153.

"Where a railroad files a bond in condemnation proceedings to take land for a branch, the owner is not entitled to a preliminary injunction to prevent it on the ground that the branch is not for a public use, but merely in interest of a private coal company, as where a railroad franchise is established the commonwealth is the only party to restrain a fraudulent use of it." *Mountz v. Pittsburgh, etc., R. Co.,* 265 Pa., 67, 108 A., 170.

In a suit to enjoin a water company's exercise of a claimed franchise right to use water from a spring on plaintiff's land, the method to be pursued by defendant company in using the water condemned is not a proper matter of inquiry; if the company's condemnation is finally affirmed and it seeks to use the property unwarrantedly, the law provides ample remedies to plaintiff. *Gring v. Water Co.,* 270 Pa.; 232, 113 A., 435.

## OBJECTION No. 2

The plaintiff contends that its property is exempt from condemnation upon the ground that it is a public service corporation itself and that for that reason the statute does not apply to it.

The rule is clearly expressed in the case of *U. S. v. Southern P. Co.,* 31 F. (2d), 852, 856, Parker, Circuit Judge, delivering the opinion: "While it is well settled that land devoted to a public use may be taken for another public use under the power of eminent domain, it is equally well settled that this may not be done, unless the intention of the Legislature to that effect has been manifested in express terms or by necessary implication. 20 C. J., 602; *Western Union Tel. Co. v. Pennsylvania R. Co.,* 195 U. S., 594, 597, 25 S. Ct., 150, 49 L. Ed., 332, 1 Ann. Cas., 533; *Adirondack Railway v. New York State,* 176 U. S., 335, 339, 20 St. Ct., 460, 44 L. Ed., 492; *Portland R., Light & Power Co. v. City of Portland* (C. C.), 181 F., 632, 634."

The contention of the defendant is that, while the power to condemn the property of the plaintiff is not conferred in express terms, it is conferred by necessary implication.

Section 6 of the Act chartering the defendant company is as follows: "That the said Savannah River Electric Company is hereby granted permission by the State of South Carolina to erect, construct, and maintain in and/or across Savannah River and its tributaries a dam or dams, and may erect, buy, sell or lease any dam or dams, power plant or power plants for the purposes set forth and described in this charter, said dam or dams may be erected, built and constructed and maintained at any points along the said river and/or its tributaries in McCormick County and/or at any points along the said river and/or its tributaries."

Section 4 of the Act conferring upon the defendant company the power of eminent domain is as follows: "That the said Savannah River Electric Company shall have the power to condemn any and all lands, property, water, riparian or other rights or easements or any other interest necessary to the construction, erection, operation and maintenance of its power plants, dams, reservoirs, and lines and for generating, accumulating, storing and transmitting electricity and power, and for any other purpose whatsoever incidental to or connected with the construction, erection and operation of its plants, dams, reservoirs and transmission lines: *Provided,* That condemnation shall be had and compensation provided for by the institution and prosecution of proceedings in the manner provided for in Article X of Chapter LII of the Civil Code of South Carolina, 1922, and amendments thereto providing for securing to railroads a right-of-way in this State; and in addition and without limitation of the foregoing shall have all the rights, powers and privileges conferred upon telegraph and telephone companies under Sections 1 to 9, both inclusive, of Chapter LIII of the Civil Code of South Carolina, 1922, and amendments thereto."

It will be observed that under Section 6 of the Act the defendant was given the right to build and maintain a dam "at any points along the said river  *  *  *  in McCormick County." At the time this charter was granted it was well known to the Legislature and to the public generally that the defendant company proposed to construct a dam across the Savannah River at or near a point opposite the Town of Clark's Hill in McCormick County. The plans and specifications which defendant company submitted to the Federal Power Commission under the Federal Water Power Act located a dam at this point some ninety-five to one hundred feet in height. The sworn return of the engineer of defendant company shows that no practical use could be made of defendants charter in McCormick County without flooding the lands of the Twin City Power Company. Necessarily, the Legislature had this in mind in passing this Act, for in Section 4 it is provided that the defendant should have the power to condemn "any and all lands, property, water, riparian or other rights or easements or any other interest necessary to the construction," etc.

In *Matter of Mayor of New York,* 135 N. Y., 253, 31 N. E., 1043, 1046, 31 Am. St. Rep., 825, the Court said:

"It is claimed that this property has already been devoted to and is actually occupied for a public use, and that it is not within the legislative intent, as evidenced by the general statutes upon the subject that any land thus used should be condemned for dock or pier purposes.

"The general rule contended for by the defendant, that property devoted to one public use will not be regarded as subject to the right of condemnation for another public use, unless the statute plainly grants such right, may be admitted to the full extent thus stated. It is not necessary that the statute should in terms so enact. A necessary implication arising from language used is quite sufficient in this, as in other cases for the purpose of an enactment. There is, however, in this statute a clear grant in terms of the power to condemn

all wharf property in New York City to which the city has no right or title, and also any rights, terms, easements, and privileges pertaining to any wharf property in the city, and not owned by the city. Section 715, New York Consolidation Act.

"We think this is a sufficient grant of power to include in condemnation proceedings property of the nature described in the statute, even when owned by a railroad or a gas company, and used by the company for landing freight or other property."

See, also, cases cited in Note 98, 20 Corpus Juris, 603.

The sworn return of defendant is to the effect that no practical use of its charter right to construct a dam in McCormick County nor of its Federal license can be made without the acquisition of all or a portion of plaintiff's land. A study of the map showing the present riparian holdings in the county makes this quite obvious. Below Clark's Hill is the lake of the Steven's Creek development. Defendant's proposed site is several miles below the lower end of Price's Island. Plaintiff's holdings extend up the Savannah River approximately twelve miles from the latter point. It therefore becomes evident that the Legislature did not intend a vain thing, and in conferring upon defendant the right to build a dam in McCormick County and to condemn property for that purpose it necessarily contemplated the acquisition of plaintiff's lands by the defendant.

Another reason why the property of the Twin City Power Company of South Carolina may be condemned is that it has given no indication, within a period of 30 years, of its intention to exercise its franchise for the public purpose for which it was organized.

In 10 R. C. L., 201, it is said: "Similarly, property which has been condemned or purchased for a public use, but which has never been put to such use or has ceased to be so used is subject to a condemnation as freely as property of a private individual."

In 20 C. J., 601: "Land owned by a corporation whose business constitutes a public use not in actual use nor essential to the exercise of its franchise, stands on the same footing as that of a private individual, and may be condemned by another corporation under the general laws."

In *Central Bridge Corp. v. Lowell*, 4 Gray (Mass.), 474, the Court said: "By the grant of a franchise to individuals for one public purpose, the Legislature do not forever debar themselves from giving to others new and paramount rights and privileges when required by public exigencies, although it may be necessary in the exercise of such rights and privileges to take and appropriate a franchise previously granted. If such were the rule, great public improvements, rendered necessary by the increasing wants of society in the development of civilization and the progress of the arts, might be prevented by legislative grants which were wise and expedient in their time, but which the public necessities have outgrown and rendered obsolete. The only true rule of policy, as well as of law, is that a grant for one public purpose must yield to another more urgent and important, and this can be effected without any infringement on the constitutional rights of the subject."

In *Zehner v. Milner*, 172 Ind., 493, 87 N. E., 209, 212, 24 L. R. A. (N. S.), 383, the Court said: "The broad doctrine advanced by appellant that, her mill having been once devoted to a public use, and her right to maintain the dam in connection therewith having been acquired under the law of eminent domain, therefore the State, although necessary, can neither remove it nor appropriate it in any manner to another public use on making proper compensation, is adverse to the following authorities: *City of Terre Haute v. Evansville, etc., R. Co.,* 149 Ind., 174, 46 N. E., 77, 37 L. R. A., 189; *Baltimore & O., etc., R. Co. v. Jackson County,* 156 Ind., 260, 58 N. E., 837, 59 N. E., 856."

The last case cited is amply annotated in 24 L. R. A. (N. S.). The editor remarks: "It seems to be the universal

rule that property, although previously condemned or purchased for a public use, but which never has been put to such use, or has ceased to be so used, is subject to condemnation the same as property of a private individual." Citing, among others, *Denver Power, etc., Co. v. R. R.*, 30 Colo., 204, 69 P., 568, 60 L. R. A., 383; *Peoria, etc., Ry. Co. v. Peoria & S. Ry. Co.*, 66 Ill., 174; *St. Louis, etc., Ry. Co. v. Belleville, etc., Ry Co.*, 158 Ill., 390, 41 N. E., 916; *Chicago, etc., Ry. Co. v. C. & N. W. Ry. Co.*, 211 Ill., 352, 71 N. E., 1017.

See, also, *Ry. Co. v. Ry. Co.*, 51 La. Ann., 1605, 26 So., 278; *Ry. Co. v. Water Co.*, 153 Mass., 561, 27 N. E., 662, 13 L. R. A., 332; *Philadelphia Co. v. R. Co.*, 73 N. J. Law, 86, 62 A., 184; *In re: Rochester R. Co.*, 110 N. Y., 119, 17 N. E., 678; *R. Co. v. Ironton*, 19 Ohio St., 299; *R. Co. v. Belle Centre*, 48 Ohio St., 273, 27 N. E., 464; *Bridge Co. v. R. Co.*, 201 Pa., 457, 51 A., 115; *Scranton Co. v. R. Co.*, 225 Pa., 152, 73 A., 1097; *Samish Co. v. Boom Co.*, 32 Wash., 586, 73 P., 670; *R. Co. v. R. Co.*, 116 Tenn., 500, 95 S. W., 1019; *R. Co. v. R. Co.*, 17 W. Va., 812; *Wheeling & Belmont Bridge Co. v. Bridge Co.*, 138 U. S., 287, 11 S. Ct., 301, 34 L. Ed., 967; *Vermont Corp. v. Dunn*, 95 Vt., 144, 112 A., 223, 12 A. L. R., 1495; *Munn v. Illinois*, 94 U. S., 113, 24 L. Ed., 77; *Diamond Jo v. Davenport*, 114 Iowa, 432, 87 N. W., 399, 54 L. R. A., 859.

## Objection No. 3

The plaintiff contends that as the land on the west side of the river, essential to the development of the defendant's project, is located in the State of Georgia, there is no legal machinery provided whereby the process of the Courts of South Carolina may enforce a condemnation of that land, and that consequently the present condemnation proceeding will avail nothing.

The obvious answer to this objection is that the defendant is making no effort to condemn the Georgia land. It is seek-

ing as a South Carolina public utility, to condemn the land in South Carolina.

The defendant has been domesticated in Georgia, and doubtless under the laws of that State could institute condemnation proceedings in order to acquire what is manifestly necessary to its project; or it may acquire it by purchase. If the defendant should be unable to acquire the necessary lands in Georgia, and the proposed dam cannot, therefore, be built, plaintiffs will suffer no wrong, as there will be no "taking" and until there is a "taking" they are at perfect liberty to use their lands as they see fit.

It may be observed that the plaintiff, a corporation of South Carolina, is not in a position to raise this question, for the land in Georgia belongs to a separate and distinct corporation. If it were a party to this proceeding and it were proposed to condemn its land in Georgia, there would be great force in its objection.

The sovereign rights of a State necessary and essential to the exercise of the right of eminent domain either by the State itself, or by its creature, are limited and confined to the geographical boundaries of the State. There is no authority for the State to act directly or indirectly beyond its borders and there is no provision made by law for ascertaining adequate compensation for taking or injury to property beyond the State lines. *State of Ga. v. Chattanooga*, 264 U. S., 472, 44 S. Ct., 369, 68 L. Ed., 799; 1 Cooley Const. Lim. (8th Ed.), 4, 248, 249; *St. Louis R. Co. v. S. W. Tel. Co.* (C. C. A.), 121 F., 276; 10 R. C. L., 19, § 17, and cases; *Pine v. N. Y.*, 112 F., 98, 50 C. C. A., 151; *Octoraro Water Company's Petition*, 15 Pa. Dist. R., 767; 1 Lewis on Em. Dom. (3d Ed.), § 385; 1 Nichols on Em. Dom. (2d Ed), 97, 98, and cases.

It is possible that under the case of *State v. R. Co.*, 51 S. C., 129, 28 S. E., 145, a direct proceeding by the State would be necessary to declare a forfeiture of the plaintiff's charter. That question is not necessary to be now decided, and what

has been said hereinbefore upon that subject is not to be considered as an adjudication; it will be left open.

It does not appear to be necessary to consider the effect of the license from the Federal Water Power Commission, although the failure of the plaintiff to secure one and its refusal to accept the one tendered is significant of its supineness.

Nor has the matter of the navigability of the river been considered, as it appears under the case of *McDaniel v. Power Co.*, 95 S. C., 268, 78 S. E., 980, 6 A. L. R., 1321, to cut small figure in the controversy.

We are impressed by the statement of the Court in *New York v. Pine*, 185 U. S., 93, 22 S. Ct., 592, 594, 46 L. Ed., 820: "If this injunction is permitted to stand the city must pay whatever the plaintiffs see fit to demand, however extortionate that demand may be, or else abandon the work and lose the money it has expended. While we do not mean to intimate that the plaintiffs would make an extortionate demand, we do hold that equity will not place them in a position where they can enforce one."

The judgment of this Court is that the order of his Honor, Judge Townsend, be reversed upon both points involved in the appeals of the parties respectively.

MESSRS. JUSTICES BLEASE and STABLER concur in result.

MR. JUSTICE CARTER concurs in part and dissents in part.

MR. JUSTICE BLEASE (concurring in result):

I concur in the result of the opinion of Mr. Justice Cothran mainly for the reason, as stated by him, that the plaintiff, Twin City Power Company of South Carolina, "has given no indication, within a period of 30 years of its intention to exercise its franchise for the public purpose for which it was organized." Both the plaintiff and the defendant are power companies, and, in my opinion, each is seeking an advantage over the other. In all probability, the plaintiff company, judging from its past history, can never accomplish anything,

except to delay the defendant company in carrying out the purpose of its organization.

MR. JUSTICE CARTER (concurring in part and dissenting in part) :

I agree with the conclusion reached in the opinion of Mr. Justice Cothran, in this case, in so far as the opinion sustains the appeal of the plaintiff and in holding that the alleged mortgagee is not a necessary party to the action; but I do not agree with the conclusion reached as to the appeal of the defendant. In my opinion, under the showing made, the Circuit Judge, his Honor, Judge Townsend, was right in issuing the enjoining and restraining order against the defendant pending the hearing and determination of the action upon its merits. I, therefore, concur in part and dissent in part.